United States District Court
Southern District of Texas
FILED

APR 1 8 2000

Michael N. Milby, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

CIVIL ACTION  CA-C-00-128

IN RE: BAKER ENERGY RESOURCES
DEBTOR

BANKR. CASE NO.  00-20338-C-11

(Appeal of Bankruptcy Court's Sua Sponte Dismissal of Bankruptcy Case )

# BRIEF OF APPELLANT
# BAKER ENERGY RESOURCES

Shelby A. Jordan
State Bar No. 11016700
Admissions No. 2195
Anne E. Catmull
State Bar No. 794932
Fed. Admissions No. 19615
Nathaniel Peter Holzer
State Bar No. 00793971
Admissions No. 21503
*Jordan, Hyden, Womble & Culbreth P.C.*
500 North Water Street, Suite 900
Corpus Christi, Texas 78471
(512) 884-5678
Attorneys for Baker Energy Resources,
Appellant

## CERTIFICATE OF INTERESTED PARTIES

The undersigned certifies that the following persons have an interest in the outcome of this case.  The representation is made in order that the Judge may evaluate possible recusal.

Appellant:        Baker Energy Resources, Inc.

Appellant's Counsel:     Shelby A. Jordan
             State Bar No. 11016700
             Admissions No. 2195
             Anne E. Catmull
             State Bar No. 794932
             Fed. Admissions No. 19615
             Nathaniel Peter Holzer
             State Bar No. 00793971
             Admissions No. 21503
             ***Jordan, Hyden, Womble & Culbreth P.C.***
             500 North Shoreline, Suite 900
             Corpus Christi, Texas 78471
             (361) 884-5678
             Attorneys for Baker Energy Resources, Appellant

Appellee:         Reading & Bates Construction Co.

Appellee's Counsel:     Leonard Rose
             Robert W. Tormohlen
             LEWIS, RICE & FINGERSH, L.C.
             1010 Walnut, Suite 500
             Kansas City, MO 64106

             Michael Schmidt
             712 American Bank Plaza
             Corpus Christi, TX  78475

             Attorneys for Reading & Bates Construction  Co.,
             Appellee

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| BAKER ENERGY RESOURCES, | § | BANKR. CASE 00-20338-C-11 |
| | § | |
| DEBTOR | § | CHAPTER 11 |
| | § | |

| | | |
|---|---|---|
| BAKER ENERGY RESOURCES | § | |
| CORPORATION | § | |
| VS. | § | |
| | § | CIVIL ACTION CA-C-00-128 |
| | § | |
| READING AND BATES | § | |
| CONSTRUCTION CO. | § | |

## TABLE OF CONTENTS

|  |  |  |
|---|---|---|
| | Table of Contents | ii-iii |
| | Table of Authorities | iv-viii |
| I. | Statement of Appellate Jurisdiction | 2 |
| II. | Statement of Standard of Review | 2 |
| III. | Statement of Issues Presented | 3 |
| IV. | Statement of the Nature of the Case | 3 |
| V. | Statement of Relevant Facts | 8 |
| VI. | Argument and Authorities | 9 |

A. *The Bankruptcy Court Erred When it Sua Sponte Dismissed Appellant's Chapter 11 Proceeding Because The Lack of Notice to Parties in Interest Violated 11 U.S.C.§ 1112(b) and the Due Process Rights of the Unnoticed Parties* — 9

(i.) *By sua sponte dismissing Appellant's chapter 11 the Bankruptcy Court violated the 11 U.S.C. § 1112(b) mandatory "notice and hearing" provision.* — 9

(ii.) *By sua sponte dismissing Appellant's chapter 11 the*

*Bankruptcy Court violated the 11 U.S.C. § 1112(b)*
*mandatory "best interest of the creditors" provision.*                13

*(iii.)  By sua sponte dismissing Appellant's chapter*
*11 the Bankruptcy Court violated the due process rights*
*of the unnoticed parties.*                                           14

*B.  The Bankruptcy Court Erred in Dismissing Appellant's*
*Chapter 11 Proceeding Sua Sponte Upon Its Implicit Finding*
*of "Bad Faith."*                                                     15

*(i.)  Appellant's bankruptcy was filed in good faith.*              15

*(ii.) Under Little Creek, there is insufficient evidence to*
*find lack of "good faith."*                                          18

*(iii.) Dismissal on the grounds of "bad faith" was*
*improper given that the judicially-created "good faith*
*filing" requirement, made Fifth Circuit law in Little*
*Creek, has since been overturned by the Supreme Court.*              20

*(iv.) The judicially-created Little Creek "good faith filing"*
*requirement, grounded in concerns regarding single*
*asset real estate bankruptcies and "new debtor" syndrome,*
*was overturned by the 1994 amendments to the Code.*                 25

*(v.)  Under Little Creek, Appellee's "unclean hands" bar*
*its entitlement to the equitable remedy of a bad faith*
*dismissal.*                                                          26

VII.   Statement of Oral Argument                                     28

VIII.  Conclusion                                                     28

IX.    Addendum with Statutes and Rules                               31

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| BAKER ENERGY RESOURCES, | § | BANKR. CASE 00-20338-C-11 |
| | § | |
| DEBTOR | § | CHAPTER 11 |
| | § | |
| BAKER ENERGY RESOURCES | § | |
| CORPORATION | § | |
| VS. | § | |
| | § | CIVIL ACTION CA-C-00-128 |
| | § | |
| READING AND BATES | § | |
| CONSTRUCTION CO. | § | |

## TABLE OF AUTHORITIES

**CASES:**

*AP Industries v. SN Phelps & Company*
*(In re AP Industries, Inc.)*, 117 B.R. 789 (Bankr.S.D.N.Y.1990)................................p.11
*Empire Enterprises, Inc. v. Leo W. Koopmans (In re Leo W. Koopmans)*
22 B.R. 395 (Bankr.D.Utah 1982).....................................................................p.11
*Feinman v. Lombardo*, 214 B.R.260,265 (D.Mass., 1977) .....................................p.16
*Flagship Marine Services, Inc. v. Belcher Towing Co.*, 966 F.2d 602,604 (11th Cir.1992).....p.3
*Grosse v. Sam (Matter of Sam)*, 894 F2d.778,781 (5th Cir.1990)............................p.14
*Hall v. Vance*, 887 F.2d. 1041, 19 Bankr.Ct. Dec. 1641,
Bankr.L.Rep. P73,127 (10th Cir.(Okla.),Oct 16, 1989)
(NO. 89-5079)............. ......................................................................p 10
*In re 6200 Ridge, Inc.* 69 B.R. 837 (Bankr.E.D.Pa. Feb 06, 1987)............................p.12
*In re AP Industries, Inc*, see *AP Industries v. SN Phelps & Company*, above
*In re Bankwest Boulder Indus.Bank*, 82 B.R. 559,17 Bankr.Ct. Dec . 50
(Bankr.D.Colo., 1988) ......................................................................p.13
*In re Blumer*, 66 B.R. 109, 114 (9th Cir. BAP 1986)......................................p.14
*In re Bofill*, 25 B.R. 550,552 (Bankr.S.D.N.Y. 1982).......................................p.17
*In re Camden Ordnance Manufacturing Co. of Arkansas, Inc.,*
238 B.R 292,293 (E.D. Pa., Aug 31, 1999)
(NO. 99-13203, 99-CV-4224)........................... .................................p.10
*In re Canion*, 196 F.3d 579 (5th Cir. 1999)..............................................p.16
*In re Clinton Certrifuge, Inc.*, 72 B.R. 900, 905 (Bankr.E.D.Pa.1987)....................p.16
*In re Copy Crafters Quckprint, Inc.* 92 B.R. 973, 985 (Bankr.N.D.N.Y.1988) ...............p.14
*In re Corp Deja Vu*, 34 B.R. 845 (Bankr.D. Maryland 1983)..................................p.12
*In re Delta Towers, Ltd.*, 924 F.2d 74, 76 (5th Cir.1991)....................................p.3
*In re Finney*, 992 F.2d. 43, 61 USLW 2690, 28 Collier Bankr.

Cas.2d 1296, 24 Bankr.Ct.Dec. 226, Bankr L.Rep. P75,225
(4th Cir.(Va.), Apr 19, 1993)(NO. 92-1598)............................ ...............................p10

*In re Fortner*, 1991 WL 17522 (D. Dan., Jan 233, 1991) (NO. 90-4060-S, 89-40325-11)......p.10

*In re Justus Hospitality Properties, Ltd.*, 86 B.R. 261,265 (Banrk.M.D.Fla.1988).................p.14

*In re Kestell,* 99 F 3d 146, 36 Collier Bankr.Cas.2d 1713,
--Bankr.L.Rep. P77,159 (4th Cir.1996) ................................................................... p.27

*In re Landes,* 195 B.R. 855 (Bankr.E.D.Pa., May 14, 1996)............................................p.20

*In re Leo W. Koopmans,* see *Empire Enterprises, Inc. v. Leo W. Koopmans*, above

*In re Little Creek Development Co.,* see *Matter of Little Creek Development Co.*

*In re Mechanical Maitenance, Inc.* 128 B.R. 382, 120 Lab.Cas P 11,017,14 Employee Benefits
Cas. 1413 (E.D.Pa., Jun 10, 1991)..........................................................................p.13

*In re Missionary Baptist Foundation, Inc.* 712 F.2d 206, 209 (5th Cir.1983)...........................p.3

*In re Moody,* 899 F.2d 383 (5th Cir. 1990).

*In re Phoenix Piccadilly, Ltd,* see *Phoenix Picadilly Ltd. v. Life Ins.Co*

*In re PPI Enterprises* (U.S.), Inc. 228 B.R. 339, 33 Bankr.Ct.Dec. 856 (Bankr.D.Del., Dec 30, 1998).................................................................................................p.20,26

*In re Quorum Ltd. Partnership*, 198 B.R.5 (Bankr.D.N.H., Jun 25, 1996)..............................p.20

*In re Rose,* 86 B.R. 439, 440 ( Bankr.E.D.Pa.1988)......................................................p.

*In re Route 202 Corp.*, 37 B.R. 367,373(Bankr.E.D.Pa.1984)........................................p.19

*In re SGL Carbon Corp.,* 200 F.3d 154, 161 (3rd Cir.Del.Dec 29, 1999)..............................p.27

*In re Texas Extrusion Corp.,* 844 F.2d 1142 (5th Cir.), cert.denied,
488 U.S. 926,109 S.Ct. 311, 102 L.Ed. 2d330 (1988)................................................p.3

*In re TLCS, Inc.*, 1990 WL 52053, (Bankr.E.D.Pa. April 20, 1990).........................................p.17

*In re Turboff,*120 B.R. 849,850 (Bankr.S.D.Tex1990) .......................................................p.14

*In re Van Dresser Corp.*, 128 F.3d 945, 947 (6th Cir. 1997)................................................p.16

*In re Victoria Limited Partnership* 187 B.R. 54 (Bank.D.Mass.1995)......................p.20,23,25,26

*In re Victory Construction Co.* 9 B.R. 549 (Bankr.C.D.Cal.1981)........................................p.27

*In re W & L Assoc., Inc.*, 71 B.R. 962, 967-68 (Bankr E.D. Pa. 1987)...................................p.16

*In re Warner,* 30 B.R. 528, 10 B.C.D. 1070 (Bkrtcy.App. 9th Cir.1983)..............................p.10

*In re Y.J. Sons & Co., Inc.* see *Y.J. Sons & Co., Inc. v. Anemone, Inc*

*In re Zip Print, Inc. (Zip Print, Inc. v. Keller),* 4 B.R. 676,677..........................................p.11

*Kaplan v. Gruder*, 1999 WL 370629, (Conn.Super, 1999) ..................................................p16

*Larson v. Groos Bank, N.A.*, 204 B.R. 500, 502 (W.D. Tex. 1996) .....................................p.16

*Lemelle v. Universal Mfg. Corp.*, 18F.3d 1268, 62 USLW 2687, 30 Collier Bankr.Cas.2d 1830,
25 Bankr.Ct.Dec. 792, Bankr.L.Rep. P75,824 (5th Cir.(La.), Apr 15, 1994)............................p.18

*Matter of Little Creek Development Co.* 779 F.2d 1068, 1073-1074 (5th Cir.1986)................p.18,23,24,25,26,27,28

*Matter of Educators Group Health Trust*, 25 F.3d 1281
 (5th Cir. 1994) ................................................................................................p.16

*Matter of Nobleman* 968F.2d 483, 485 n. 5 (5th Cir.1992), aff'd, 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993)...................................................................................p.2

*Matter of Sullivan Cent.Plaza I, Ltd.*, 935 F.2d 723, Bankr.L.Rep. P74,
122 (5th Cir.(Tex.) Jul 17, 1991) (NO.89-7001, 89-7002, 90-1391)........................................p.10

*Patterson v. Shumate*, 504 U.S. 753, 112 S.Ct. 2242, 199 L.Ed. 2d 519 (1992)......................p.23,24

*Phoenix Picadilly Ltd. v. Life Ins.Co. (In re Phoenix Piccadilly, Ltd.),* 849 F.2d 1393, 1394 (11th Cir.1988)......................................................................................................p.

Table of Authorities                                                    Page viii.

*Sandy Ridge Dev. Corp. v. Louisiana Nat'l bank (In re Sandy Ridge Dev. Corp.)*, 881 F.2d 1346, 1352(5th Cir.1989)..................................................................................................................p.18

*Sumeda v. Yuimen* 409 F.2d 654(9th Cir.1969)*cert.denied*,405 U.S. 964 92 S.Ct. 1168,(1972) p.

*Taylor v. Freeland & Kronz*, 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (U.S.Pa., Apr 21, 1992) (NO. 91-571)...........................................................................................................p.24

*Toibb v. Radloff* 501 U.S. 157, 160, 111 S. Ct. 2197,2199, 115 L.Ed.2d 145 (1991).................p.23,

*Y.J. Sons & Co., Inc. v. Anemone, Inc. (In re Y.J. Sons & Co., Inc.),* 212 B.R. 793, 800 (D.N.J. 1997)....................................................................................................................................p.17,26

## CODES:

11 U.S.C. § 101................................................................................................................p.26
11 U.S.C. § 109..............................................................................................................p.109
11 U.S.C. § 305................................................................................................................p.12
11 U.S.C. § 361...............................................................................................................p
11 U.S.C. § 362(d)(1)......................................................................................................p.25
11 U.S.C. § 362(d)(3)......................................................................................................P.26
11 U.S.C. § 363 (e)..........................................................................................................p.
11 U.S.C. § 364(d)(1).......................................................................................................p.
11 U.S.C. § 365...............................................................................................................p.17
11 U.S.C. § 522(l)............................................................................................................p.
11 U.S.C. § 541(c)(2)......................................................................................................p.23
11 U.S.C. § 727................................................................................................................p.25
11 U.S.C. § 1112(b)(1) ..............................................................................................p.3,22,24,29
11 U.S.C. § 1112(b)(2)....................................................................................................P.22
11 U.S.C. § 1112(b)(3)....................................................................................................P.22
11 U.S.C. § 1112(b)(4)....................................................................................................P.22
11 U.S.C. § 1112(b)(5)....................................................................................................P.22
11 U.S.C. § 1112(b)(6)....................................................................................................P.22
11 U.S.C. § 1112(b)(7)....................................................................................................P.22
11 U.S.C. § 1112(b)(8)....................................................................................................P.22
11 U.S.C. § 1112(b)(9)....................................................................................................P.22
11 U.S.C. § 1123(a)(5)(D)...............................................................................................p.18
11 U.S.C. § 1123 (b)(4)...................................................................................................p.18
11 U.S.C. § 1129 (a)(3)...................................................................................................p.24
11 U.S.C. 1141(d)(3).......................................................................................................p.18
18 U.S.C. § 152...............................................................................................................P25

## CODES:

11 U.S.C. § 101................................................................................................................p.
11 U.S.C. § 109................................................................................................................p
11 U.S.C. § 305................................................................................................................p
11 U.S.C. § 361................................................................................................................p
11 U.S.C. § 362(d)(1) and (3)..........................................................................................p.
11 U.S.C. § 363 (e)..........................................................................................................p.
11 U.S.C. § 364(d)(1).......................................................................................................p.
11 U.S.C. § 365................................................................................................................p

11 U.S.C. § 522(l).............................................................................p.

11 U.S.C. § 541(c)(2).......................................................................p.23

11 U.S.C. § 727.................................................................................p.

11 U.S.C. § 1112(b)(1) through 11 U.S.C. § 1112(b)(10) ................p.

11 U.S.C. § 1123(a)(5)(D)................................................................p.

11 U.S.C. § 1123 (b)(4)....................................................................p.

11 U.S.C. § 1129 (a)(3)....................................................................p.

11 U.S.C. 1141(d)(3).........................................................................p.

18 U.S.C. § 152................................................................................

## CODES:

11 U.S.C. § 101.................................................................................p.

11 U.S.C. § 109.................................................................................p

11 U.S.C. § 305.................................................................................p

11 U.S.C. § 361.................................................................................p

11 U.S.C. § 362(d)(1)......................................................................p.

11 U.S.C. § 362(d)(3).....................................................................P.25

11 U.S.C. § 363 (e)...........................................................................p.

11 U.S.C. § 364(d)(1).......................................................................p.

11 U.S.C. § 365..............................................................................p

11 U.S.C. § 522(l).............................................................................p.

11 U.S.C. § 541(c)(2)........................................................................p.

11 U.S.C. § 727.................................................................................p.

11 U.S.C. § 1112(b)(1) through 11 U.S.C. § 1112(b)(10) ................p.9,

11 U.S.C. § 1123(a)(5)(D)................................................................p.

11 U.S.C. § 1123 (b)(4)....................................................................p.

11 U.S.C. § 1129 (a)(3)....................................................................p.

11 U.S.C. 1141(d)(3).........................................................................p.

18 U.S.C. § 152...............................................................................P.25

28 U.S.C. § 157...............................................................................p.7

28 U.S.C. § 158(a)(1)........................................................................p.

## RULES:

Federal Bankruptcy Rule1008..........................................................p.25

Federal Bankruptcy Rule 2002..........................................................p.9

Federal Bankruptcy Rule 8001..........................................................p.

Federal Bankruptcy Rule 9011..........................................................p.25

## PUBLICATIONS:

Collier on Bankruptcy Vol. 7, Sec. 1112.07[3]................................p.27

28 U.S.C. § 158(a)(1)........................................................................p.

Federal Bankruptcy Rule 2002..........................................................p.

Federal Bankruptcy Rule 8001.................................................................................................p.

Federal Bankruptcy Rule 9011.................................................................................................p.

p.

# BRIEF IN SUPPORT OF
## DEBTOR'S APPEAL OF BANKRUPTCY COURT'S
### *SUA SPONTE* ORDER DISMISSING CHAPTER 11

TO THE HONORALBE UNITED STATES DISTRICT JUDGE:

COMES NOW, Baker Energy Resources Corporation, Debtor and Debtor-in-Possession in the referenced bankruptcy proceeding ("Appellant"), and hereby moves this court for reversal of the Bankruptcy court's *sua sponte* order dismissing Appellant's chapter 11 bankruptcy, which order is dated February 11, 2000, on the grounds that: (i) the dismissal occurred without notice to or an opportunity to be heard by all the parties in interest, in violation of due process guaranteed by the Constitution, provided by statute, and protected by controlling case precedent; and on the additional and further grounds that (ii) the bankruptcy court abused its discretion by dismissing the Debtor's bankruptcy implicitly for "bad faith" both an on the due process evidentiary basis and as a matter of law.

## I.
### STATEMENT OF APPELLATE JURISDICTION

1.    Dismissal is a "proceeding dealing with administration of the estate" and as such this Court has jurisdiction of this appeal pursuant to the provisions of 28 U.S.C. §§ 158(a)(1) and Federal Rules of Bankruptcy Procedure 8001, *et. seq.* ("BRP").

## II.
### STATEMENT OF STANDARD OF REVIEW[1]

2.    A bankruptcy court's conclusions of law are subject to de novo review by the district court. *Matter of Nobleman*, 968 F.2d 483, 485 n. 5 (5th Cir.1992), *aff'd*, 508 U.S. 324,

---

[1]    Apart from the formal standard of review mentioned below, a district court functioning in an appellate capacity over a bankruptcy court order may, because of its inherent bankruptcy jurisdiction under § 157 of Title 28, reshape the relief granted by the bankruptcy court. *In re Moody*, 899 F.2d 383 (5th Cir. 1990).

113 S.Ct. 2106, 124 L.Ed.2d 228 (1993); *In re Delta Towers, Ltd.*, 924 F.2d 74, 76 (5th Cir.1991). Findings of fact by the bankruptcy court will be upheld unless found to be clearly erroneous. *In re Missionary Baptist Foundation, Inc.*, 712 F.2d 206, 209 (5th Cir.1983).

3.      A finding of fact is clearly erroneous if the court is "left with the definite and firm conviction that a mistake has been committed." *In re Texas Extrusion Corp.*, 844 F.2d 1142, 1164 (5th Cir.), cert. denied, 488 U.S. 926, 109 S.Ct. 311, 102 L.Ed.2d 330 (1988).

4.      This court reviews de novo the bankruptcy court's application of the law to particular facts. *Flagship Marine Services, Inc.* v. *Belcher Towing Co.*, 966 F.2d 602, 604 (11th Cir.1992).

## III.
### STATEMENT OF ISSUES PRESENTED

5.      Whether the bankruptcy Court erred in dismissing Appellant's Chapter 11 proceeding *sua sponte* thereby depriving the Debtor and its creditors of due process of law in violation of Bankruptcy Code § 1112(b) and the due process rights of the unnoticed creditors.

6.      Whether the Bankruptcy Court erred in determining, *sua sponte* (or on an emergency basis), that the Debtor's Chapter 11 case was filed in bad faith, in fact or as a matter of law.

## IV.
## STATEMENT OF THE NATURE OF THE CASE

7.      On February 2, 2000, Appellant filed its chapter 11 bankruptcy. At the same time, Appellant removed to the bankruptcy court a pending state court lawsuit being prosecuted by Appellee. A state district court trial date was set for February 14, 2000, or 12 days after filing and notice of the removal of the state court suit.

8.     On February 9, 2000, (7 days after notice of the removal) Appellee filed <u>in the Adversary Proceeding</u> removed to Bankruptcy Court an "Emergency Motion For Remand" of the Adversary Proceeding back to state court.   This Emergency Motion included a suggestion of an alternative remedy of dismissal of the Chapter 11 case as a "bad faith" filing.   No motion to dismiss the Chapter 11 case was filed in the main bankruptcy case (and only a reference to a suggested remedy in the Adversary Proceeding mentioned "bad faith").   At least one party listed as a creditor in the bankruptcy case was not served with the Emergency Motion or any notice of the allegation of a "bad faith" filing.     [*See*, Original Designation of Record Debtor's Fist Amended Schedules].   The bankruptcy Court scheduled a hearing for February 11, only two days later, at a time when lead counsel was in ordered depositions in another City.   No motion, and no notice of a hearing on a motion to dismiss the main case (suggested to be heard in the Adversary Proceeding) was served on known creditors and parties in interest entitled to notice.

9.     On February 11, 2000, the bankruptcy court heard Appellee's emergency motion and remanded the Removed Case to the state court.   That Remand Order is subject to a Motion for Rehearing now under consideration by the Honorable Bankruptcy Court.   However,  in addition to remanding the State Court Case, the bankruptcy court *sua sponte* dismissed Appellant's chapter 11 bankruptcy.   Appellant appeals the *sua sponte* order of dismissal.   The purported basis of the "emergency" was a pending trial date.   However, the emergency relief (as noted by the Honorable Bankruptcy Court) could not be fashioned even if all Appellee's motion was granted because both orders were appealable and ten (10) days was required, without a stay, for either order to be final.   Such passage of time would have prevented the trial date of the following Monday to have gone forward.   Debtor removed the case on February 2, 2000 -- allowing sufficient time to permit an emergency hearing within the 10 day period.   Appellee did

nothing until the Thursday before the scheduled trial date. Because the requested relief was based on an impossible trial date when filed by Appellee, no emergency in fact existed.

10.     Without lead counsel, and with only short notice on the remand issue, much evidence which would have been available to the Honorable Bankruptcy Court if lead counsel could be present, was not presented. Among the important facts not available on the emergency basis, include the history of this entire case. This appeal is the latest chapter in a long history of legal proceedings involving at least *nine (9) separate lawsuits*, wherein Appellant has sued by Appellee, all arising out of the same common nucleus of operative facts. Prior to the Appellant's bankruptcy, the Appellee's most recent lawsuit was filed in the 113th Judicial District Court of Harris County, Texas, styled *Reading & Bates Construction Co. and Reading & Bates Horizontal Drilling, Ltd. vs. Baker Energy Resources Corporation, Baker Marine Corporation, LLR Holding Corporation, Berco Services, Inc., Larry A. Baker, Jr., Larry A. Baker, Sr., Miriam Baker, Russell Baker, Billy Greer, Thomas A. Powers, John L. Haley and Ronald G. Halderman* (the "State Court Suit" or the "Removed Case"). Debtor/Appellant removed the State Court Suit to the Bankruptcy Court upon filing bankruptcy.

11.     Appellee's first eight lawsuits include:

•       Three (3) suits were filed by Appellee over alleged patent and trademark infringement claims (two in Texas were tried and found against Appellee with no liability by the Appellant) and after two unfavorable verdicts, a third suit filed by Appellee in Canada,[2] in which *9 years* after trial, a judgment was rendered. This Canadian Judgment is the sole basis of the next series of suits. [*See*, Supplemental Designation of Record

3/8/00 Proffer of Testimony (of Larry Baker) and Judicial Notice, including attached Exhibits].

•       Six (6) more lawsuits, brought by Appellee through a string of forum shopping venues that will clearly not end even if an eventual remand of the State Court Suit results in another judgment in favor of the Appellant.[3]  On more than one occasion (including through the Supreme Court of Louisiana) Appellee have lost on the issue of whether a fraudulent transfer occurred, which issue is the central focus of the State Court Suit.  After each loss, Appellee simply goes to another Court or state and re-files its suit, hoping that eventually its forum shopping will result in a favorable verdict, as after all, it worked in Canada. [*See*, Supplemental Designation of Record 3/8/00 Proffer of Testimony (of Larry Baker) and Judicial Notice, including attached Exhibits].

12.     Importantly, Appellee is not the claims holder or the true party in interest to the underlying judgment.  Rather, the Judgment and claims were assigned to Appellee who paid either no, or little, consideration for the assignment of the judgment. [*See*, Supplemental Designation of Record 3/8/00 Proffer of Testimony (of Larry Baker) and Judicial Notice, including attached Exhibits].  As a result of no realistic economic incentive to not litigate, every time the Appellee is defeated on the issues of a fraudulent transfer  (whether on the merits or through attempts at injunctive relief) Appellee simply goes to another court and files another suit on the same common nucleus of operative facts (the alleged fraudulent transfer) or Appellee adds new parties and new causes of actions.   The Debtor filed bankruptcy seeking to finally put the

---

2       Debtor did a project in Canada, subjecting it to the Canadian Courts -- resulting in a suit, trial, and a nine year wait before judgment.

incessant litigation to rest, and unless a Chapter 11 Plan or a bankruptcy court discharge or injunction applies, these suits will likely continue.

13.     After twenty years of litigation, on February 2, 2000, Appellant filed its Chapter 11 case seeking to finally conclude to judgment, in a single court in this Country having:  (i) exclusive jurisdiction over all the Debtor's property (whether or not claimed to be fraudulently transferred) and  (ii)  jurisdiction over all possible parties claimed by Plaintiffs to have participated or benefited from the alleged fraudulent transfer;  and  (iii)  jurisdiction to enjoin or discharge all rights to bring these type of claims in any other state or federal court.  11 U.S.C. § 157.  Appellant removed the pending State Court Suit properly and timely to the bankruptcy court, several weeks prior to a scheduled trial.

14.     Pursuant to Appellee's "emergency motion" the bankruptcy court set a hearing to consider remand of the removed State Court Suit.  The result?  On less than two-days notice and at a time when Appellee's lead counsel could not attend the "emergency hearing", the Honorable Bankruptcy court not only remanded the Removed Case to the State Court (an appealable order which by its nature eliminated the "emergency" relief basis claimed by the Appellee) but also (after refusing a verbal motion for continuance by an associate of lead counsel) and without prior notice, *sua sponte* dismissed this Chapter 11 case, the only possible legal basis for such action being a "bad faith" filing as alleged in the "emergency" motion for remand in the adversary proceeding.  Debtor appeals the erroneous dismissal of its bankruptcy case.  However, when presented the evidence regarding the remand [*See*, Supplemental Designation of Record 3/8/00 Proffer of Testimony (of Larry Baker) and Judicial Notice, including attached Exhibits] and an

---

3       Were it true that Plaintiffs only wanted a fair trial, the State of Louisiana would have long ago

opportunity afforded to argue the relative merits of the relationship of the parties and creditors [*See*, Original Designation of Record - Debtor-Defendant's Brief in Support of Motion For Reconsideration of Order Granting Plaintiff's Emergency Motion To Remand].

## V.

## STATEMENT OF THE RELEVANT FACTS

15.    On February 2, 2000, Appellant filed its petition for relief under 11 U.S.C. § 1101, *et. seq.* [*See* Appellant's Designation of Record on Appeal and Statement of Issues Presented on Appeal "Baker Energy's Voluntary Petition For Chapter 11."]

16.    On February 9, 2000, (7 days after notice of the removal) Appellee filed in the Adversary Proceeding removed to Bankruptcy Court an "Emergency Motion For Remand" of the Adversary Proceeding back to state court.[*See* Appellee's Designation of Original Items "Emergency Motion to Remand Civil Action Removed from the District Court of Harris County, Texas or Alternatively to Sever or Dismiss the Debtor from the Action to Allow Remand or Alternatively to Dismiss the Debtor's Chapter 11"]

17.    The bankruptcy Court scheduled a hearing for February 11, only two days later, at a time when lead counsel was in ordered depositions in another City.

18.    On February 11, 2000, the bankruptcy court heard Appellee's emergency motion and remanded the Removed Case to the state court.

19.    On February 11, 2000, the bankruptcy court heard Appellee's emergency motion and remanded the Removed Case to the state court.  That Remand Order is subject to a Motion for Rehearing now under consideration by the Honorable Bankruptcy Court. [*See* Appellant's Designation of Record on Appeal and Statement of Issues Presented on Appeal "Motion For

resolved Plaintiffs complaints.

Reconsideration of Order."] However, in addition to remanding the State Court Case, the

bankruptcy court *sua sponte* dismissed Appellant's chapter 11 bankruptcy. [*See* Appellant's

Designation of Record on Appeal and Statement of Issues Presented on Appeal "Order

Dismissing Chapter 11."] Appellant appeals the *sua sponte* order of dismissal. [*See* Appellant's

Designation of Record on Appeal and Statement of Issues Presented on Appeal "Notice of

Appeal."]

## VI.
## ARGUMENTS AND AUTHORITIES

A: THE BANKRUPTCY COURT ERRED WHEN IT *SUA SPONTE* DISMISSED APPELLANT'S CHAPTER 11 PROCEEDING BECAUSE THE LACK OF NOTICE TO PARTIES IN INTEREST VIOLATED 11 U.S.C. § 1112(b) AND THE DUE PROCESS RIGHTS OF THE UNNOTICED PARTIES

(i.) By *sua sponte* dismissing Appellant's chapter 11 case the Bankruptcy Court violated the 11 U. S. C. § 1112(b) mandatory "notice and hearing" provision.

20.    At the hearing on Appellee's motion for emergency remand of the State Court

Suit, the bankruptcy court dismissed Appellant's chapter 11 in the known absence of notice to

Appellant's other creditors, a clear violation of their Constitutional rights to due process and of

the 11 U.S.C. § 1112(b) "notice and hearing" requirement. *See* transcript, p. 27 line 22 through

p. 28 line 25.   In fact, the "emergency" and "sua sponte" procedure employed resulted in the

inability of the Honorable Bankruptcy Court to hear and consider the relevant facts -- and

resulted in a wrong conclusion.

21.    Section 1112(b) of title 11 plainly requires that dismissal of a chapter 11 can

happen only after notice and hearing to creditors.  That is, 11 U.S.C. § 1112(b) provides, in

relevant part, "*after notice and hearing* . . . the court may dismiss a case under this chapter for

cause[.]"**11 U.S.C. § 1112(b)** (emphasis added).   Bankruptcy Rule 2002, entitled "Notice To

Creditors, Equity Security Holders, United States, and United States Trustee," requires that parties in interest are entitled to twenty days notice of proceedings. Part (a)(4) of the rule speaks specifically to hearings on the dismissal of chapter 11 cases, and provides:

> [T]he clerk or some other person as the court may direct, shall give the debtor, the trustee, *all creditors* and indenture trustees at least 20 days' notice by mail of:
>
> .            .            .
>
> (4) in a chapter 7 liquidation, a chapter 11 reorganization case, or a chapter 12 family farmer debt adjustment case, *the hearing on the dismissal of the case* or the conversion of the case to another chapter, unless the hearing is under 707(a)(3) or 707(b) or is on dismissal of the case for failure to pay the filing fee[.] **Fed. R. Bankr. P. 2002(a)(4)** (2000) (emphasis added).

22.     Section 1112(b) mandates that a dismissal of a chapter 11 bankruptcy can happen only after notice and hearing. *In re Finney*, 992 F.2d 43 (4th Cir.1993) (in finding debtor's misconduct justified court's *sua sponte* conversion of chapter 11 debtor to chapter 7, court held that debtor entitled to notice and hearing under 1112(b)); *Hall v. Vance*, 887 F.2d 1041 (10th Cir.1989) (bankruptcy court's sua sponte dismissal must be on notice and hearing)*; In re Camden Ordnance Mfg. Co. of Arkansas, Inc*., 238 B.R. 292,293 (E.D.Pa.,1999) ("The Bankruptcy Code, 11 U.S.C. 1112(b) provides that after notice and hearing, for cause shown, the bankruptcy court may convert or dismiss a case"); *In re Fortner*, 1991 WL 17522 (D.Kan. 1991) (district court found that debtor received sufficient "notice and hearing" under 1112(b) despite debtor's claim that he was confused about the day of the hearing*); In re Warner*, 30 B.R. 528 (9th Cir.BAP 1983) (district court reversed bankruptcy court's order dismissing chapter 11 case on the grounds that 1112(b) notice insufficient); *see also Matter of Sullivan Cent. Plaza I, Ltd*., 935 F.2d 723 (5th Cir. 1991) (finding that notice was sufficient to convert under 1112(b), the Fifth Circuit wrote "[it] is true that the bankruptcy court may issue a conversion order only "after notice and a hearing 11 U.S.C. 1112(b)").

23.     Not surprisingly, virtually all reported decisions wherein a court is asked to rule on an 1112(b) motion but notice to creditors is deficient, the court upholds the "notice and hearing" provision of 1112(b) and denies the dismissal or resets the dismissal hearing so that proper notice to creditors can be achieved.  For instance, in *AP Industries, Inc. v. SN Phelps & Company (In Re Ap Industries, Inc.)*, 117 B.R. 789 (Bankr. S.D.N.Y.1990), a defendant in an adversary proceeding filed a filed motion to dismiss, for summary judgment, and for change of venue.  The bankruptcy court, noting that the motion was served only on the parties in the adversary proceeding and not on creditors in the underlying bankruptcy unhesitatingly ruled "[w]hen a party in interest purports to move for the dismissal of a case without first having afforded the requisite notice, the motion may not be heard." *AP Industries* at 791.

24.     The *AP Industries* court relied not only on the plain text of 1112(b) but on an earlier case wherein the facts are identical to the instant case.  A party to an adversary proceeding sought to dismiss a chapter 11 without providing creditors notice of its 11112(b) motion and the hearing thereon.  *See, In re Zip Print, Inc. (Zip Print, Inc. v. Keller)*, 4 B.R. 676, 677 (Bankr.N.D.Ga.1980).  The *Zip Print, Inc.*, bankruptcy court held that a motion made by a defendant in an adversary proceeding to dismiss the plaintiff- debtor's chapter 11 case would not be considered until proper notice was afforded to all the parties in interest.  Moreover, the *Zip Print, Inc.*, bankruptcy court went so far as to direct that the party moving for dismissal shall bear all costs and expenses of the notice.

25.     Many courts have faced the question of dismissal coupled with a secured lender's motion for relief from the automatic stay, often accompanied by *innuendo* and allegations of bad faith filing.  Regardless, the courts have unswervingly upheld the "notice and hearing" provision of 1112(b). *See*, e.g., *Empire Enterprises, Inc. v. Leo W. Koopmans (In Re Leo W. Koopmans)*

22 B.R. 395 (Bankr.D.Utah 1982), wherein the court explains the policy for such stringent

adherence to the "notice and hearing" provision of 1112(b) by comparing 1112(b) motions to the

expedited procedures and limited notice required in motions for relief from the automatic stay:

> Motions to dismiss, on the other hand, may be brought by any party.  The
> hearings need not be accelerated and may be formal.  The movant has the
> burden of proof.  *The issues are broad, involving the future of the estate,
> thus, notice to all or representative parties in interest is necessary*.  The
> presentation of views should be many-sided.  Indeed, the trustee or creditor
> committees may investigate the business as a prelude to the hearing.  Time
> and preparation commensurate with the relief sought are expected.

*Id.* at 400 (emphasis added); *followed* by *In re 6200 Ridge, Inc.,* 69 B.R. 837

(Bankr.E.D.Pa.1987) (relying on *Emprie Enterprises*, "[i]n my initial decision, I denied

Continental's request for dismissal because the section 305 and 1112(b) issues had been raised

for the first time in the bank's memorandum of law rather than by motion and therefore were not

properly before the court . . . . motions to dismiss raise broad issues involving the future of the

whole estate, *require notice to all representative parties*") (emphasis added) (citations omitted).

26.     In *In re Corp. Deja Vu*, 34 B.R. 845 (Bankr. D. Maryland 1983), wherein a

bankruptcy court found that debtor's filing so lacked good faith --debtor corporation had been

created for the sole purpose of buying time for its principal to broker a sale of the property-- that

immediate relief from the automatic stay was required, the court still vigorously  defended the

"notice and hearing" provision of 1112(b) and declined to dismiss in the face of deficient notice

to creditors.

> What this court is being asked to do is to determine at a §362 hearing issues
> that the Code indicates should be resolved at an entirely different hearing
> with notice to all creditors.  The court declines to handle this case upon a
> motion to dismiss.  Respondent has had no notice of any such hearing.
> Dismissal under 11 U.S.C.  1112(b) is permitted only after notice and
> hearing.  *In re Warner*, 30 B.R. 528, (Bkrtcy.App. 9th Cir.1983).

27.     In *In re Bankwest Boulder Indus. Bank*, 82 B.R. 559 (Bankr. D. Colo., 1988), a creditor moved to abstain and dismiss the chapter 11 petition.  The bankruptcy court denied the motion to dismiss finding that because a mere 2% of the debtor (non-FDIC) bank's depositors had notice of the motion to dismiss, notice was "fatally deficient."

**(ii.) By *sua sponte* dismissing Appellant's chapter 11 case the Bankruptcy Court violated the 11 U. S. C. § 1112(b) mandatory "best interest of the creditors" provision.**

28.     Section 1112(b) of title 11 plainly requires that as between conversion or dismissal of a chapter 11 the court must choose the remedy that  is in the "best interest of the creditors."  That is, 11 U.S.C. § 1112(b) provides, "the court may convert a case under this chapter to a case under chapter 7 of this title or may dismiss a case under this chapter, whichever is in the best interests of the creditors[.]" **11 U.S.C.  § 1112(b).**

29.     No party is better suited to determine and assert what is in the best interest of a creditor than that creditor.  *Sua Sponte* dismissal would afford no opportunity for the bankruptcy court to hear the basis of a creditor's opposition.   In this case, no real opportunity was afforded when the Court considered an emergency remand motion, and *sua sponte* ruled in the main case. It follows that deficient or absence of notice to a creditor of a pending motion to dismiss prejudices a creditor's right to explain its interests to the court, diminishing the odds that the creditor's interests will in fact be recognized.   Just such concerns were addressed in *In re Mechanical Maintenance, Inc.,* 128 B.R. 382 (E.D.Pa.1991).  In *Mechanical Maintenance*, the district court reversed a bankruptcy court's voluntary dismissal of a chapter 11 debtor on the grounds that employee creditors of debtor were better off if the case were converted to chapter 7 rather than dismissed. "The choice of conversion or dismissal  must be based, nevertheless, on a "best interest of creditors and the estate" test." *Mechanical Maintenance, Inc* at 386; see also *In*

*re Copy Crafters Quickprint, Inc.*, 92 B.R. 973, 985 (Bankr.N.D.N.Y.1988);  *In re Justus Hospitality Properties, Ltd.*, 86 B.R. 261, 265 (Bankr.M.D.Fla.1988);  In re Rose, 86 B.R. 439, 440 (Bankr.E.D.Pa.1988) (after court found cause under §1112(b)(10), it then looked to best interest test to determine whether conversion or dismissal was more appropriate).  Dismissal of this case, as noted above, relegates all the creditors and the parties to endless state court litigation (now involving nine different suits over 20 years).  Certainly evidence of the impact of these facts (which could not be offered or supported on a *sua sponte* order) are important to the entire judicial process, not just the bankruptcy environment.

30.    Similarly, in *In re Turboff*, 120 B.R. 849, 850 (Bankr.S.D.Tex.1990), the bankruptcy court was so concerned with honoring the 1112(b) best interest of the creditors test that on the debtor's motion for voluntary dismissal and creditor's 1112(b) objection, the court fashioned a conditional dismissal order giving a creditor ample opportunity to prove to the court that it lost significant rights by virtue of debtor's dismissal. *In re Turboff* at 850 (court would set hearing on issue of whether creditor would be allowed to use avoidance provisions of Code).

**(iii.) By *sua sponte* dismissing Appellant's chapter 11 case the Bankruptcy Court violated the due process rights of the unnoticed parties.**

31.    Creditors have due process rights under the Code. *Grossie v. Sam (Matter of Sam)*, 894 F.2d 778, 781 (5th Cir.1990) ("constitutional due process requires ... that [the creditor] have 'notice reasonably calculated, under all the circumstances, to apprise [him] of the pendency of the action and afford [him] an opportunity to present [his] objections.'")  In recognition of an unsecured creditor's due process rights a Ninth Circuit BAP has gone so far as to vacate an *ex parte* order allowing debtor's post-petition use of credit, and invalidating a lien created by debtor's use of credit. *In re Blumer*, 66 B.R. 109, 114 (9th Cir. BAP 1986).   Most

critical to the due process is a fair opportunity to present evidence and arguments -- a missing element in *ex parte* or *sua sponte* orders (this is not to argue that *sue sponte* orders are not appropriate when all facts have been presented -- but that is not what occurred in this case).

32.    Appellant's creditors received absolutely no notice of the motion to dismiss, the hearing on the motion to dismiss, or the possibility that the bankruptcy court would *sua sponte* dismiss the chapter 11.  Likewise, the Debtor did not receive procedurally correct notice - or notice in time to react - to the threat of dismissal of its case.  Less than two business days notice, with lead counsel unavailable, is insufficient notice as a matter of law in this case.  Particularly where the notice was on an alleged emergency that did not exist.   The Debtor and its creditors lost any opportunity object and show the court that they are better served in a bankruptcy, as any proceeds from the pending litigation between Appellant and Appellee would then be divided pro rata among creditors of equal standing rather than end up solely in the hands of the most aggressive creditor.

## B. THE BANKRUPTCY COURT ERRED IN DISMISSING APPELLANT'S CHAPTER 11 PROCEEDING *SUA SPONTE* UPON ITS IMPLICIT FINDING OF "BAD FAITH."

### (i)    Appellant's bankruptcy was filed in good faith.

33.    Although Debtor certainly could raise only the due process argument in this appeal, (Appellant is seeking only that this case be reversed to allow it to present evidence on the issue of "bad faith" filing) it is important to Appellee that this Honorable District Court know and understand that that bankruptcy court's implicit finding of "bad faith" and its explicit finding that the bankruptcy was simply "a two party dispute" were clearly erroneous.

34.    Appellant filed a good faith, multi-party, liquidating chapter 11 bankruptcy.  *See* Debtor's First Amended Schedules.  Not only was there no "bad faith," there is a compelling

argument that there is no "good faith" requirement to file a Chapter 11 bankruptcy as no such standard exists in the text of the Bankruptcy Code related to dismissal.

35.     This Chapter 11 is *not* a two-party dispute. At a minimum, the co-defendants of the Appellant in the Removed Case have contribution, subrogation, and/or indemnification rights as contingent creditors of the Appellant's bankruptcy estate. *See In Re Canion,* 196 F.3d 579 (5th Cir. 1999). Furthermore, another non-defendant creditor is owed approximately $62,000.00, and received no notice of the hearing on the motion to remand. [*See*, Original Designation of Record Debtor's Fist Amended Schedules w/attached Schedules A, B, D, E, F, G, and H; Debtor's First Amended List of Creditors Holding 20 Largest Unsecured Claims].

36.     This Chapter 11 estate is *not* a no-asset estate. The Plaintiff/Appellee's own judicial admissions bankruptcy court, and in the various state court proceedings, place a value on the assets of the Debtor alleged to have been fraudulently transferred at somewhere between $1.5 and $8 million. *See* Debtor's First Amended Schedules. Any recovery on a fraudulent transfer is "property of the estate" and thus, this estate could not be a no-asset estate as a matter of law.[4] *In Re Canion,* 196 F.3d 579 (5th Cir.1999); *Matter of Educators Group Health Trust*, 25 F.3d 1281 (5th Cir. 1994); *In re Van Dresser Corp.*, 128 F.3d 945, 947 (6th Cir. 1997); *Feinman v. Lombardo*, 214 B.R. 260, 265 (D.Mass, 1997); *Larson v. Groos Bank, N.A.*, 204 B.R. 500, 502 (W.D.Tex.1996); *Kaplan v. Gruder*, 1999 WL 370629, 6 (Conn.Super, 1999). [*See*, Original Designation of Record Debtor's Fist Amended Schedules].

---

[4]     In fact, if Plaintiffs allegation of a fraudulent transfer were ever given any weight by a Court (to date, no Court has done so) the setting aside of such transfers create (or reinstate) numerous "claims" against the estate, all of whom are legitimate creditors of the Debtor.

37.     Moreover, this Chapter 11 has a legitimate purpose. It bears repeating that *this litigation has gone on for 20 years, in two countries, in over nine (9) different courts* -- and must be put to an end through a final judgment on the Appellee/Plaintiff's claims, and thereafter be the subject of a discharge and/or Plan in liquidation injunctive remedies if Plaintiffs decide to again file another suit on these same claims. The purpose sought to be accomplished by the filing of this Chapter 11 case is to finally conclude, to judgment, in the single court in this Country having exclusive jurisdiction over all the Debtor's property (whether or not claimed to be fraudulently transferred) and jurisdiction over all possible parties claimed by Plaintiffs to have participated or benefited from the alleged fraudulent transfer; and, finally, jurisdiction to enjoin by way of discharge, all rights to bring these type of claims in any other state or federal court.

38.     A chapter 11 with such a singular purpose is by definition not "bad faith." *In re TLCS, Inc.,* 1990 WL 52053, (Bankr.E.D.Pa. April 20, 1990) (holding that it is not "bad faith" to obtain a breathing space from litigation in other forums); *see also In re Clinton Centrifuge, Inc.,* 72 B.R. 900, 905 (Bankr.E.D.Pa.1987) (while holding that "the application of the good faith doctrine to a particular chapter 11 filing cannot be based upon a rigid utilization of specific factors" the court also noted it is not "bad faith" for debtors to file for bankruptcy in order to take advantage of a particular provision of the Code); *see also In re W & L Assocs., Inc.,* 71 B.R. 962, 967-68 (Bankr.E.D.Pa.1987) (rejecting the argument that it was "bad faith" to file a petition solely for the purpose of using 365 of the Bankruptcy Code); *In re Bofill*, 25 B.R. 550, 552 (Bankr.S.D.N.Y.1982) (permitting rejection of contract even though rejection was sole purpose of bankruptcy filing).

39.     That Appellant's lack an on-going business operations is irrelevant. *Toibb v. Radloff* 501 U.S. 157, 160, 111 S.Ct. 2197, 2199, 115 L.Ed.2d 145 (1991) ("The Code contains

no ongoing business requirement for reorganization under Chapter 11, and we are loath to infer

the exclusion of certain classes of debtors from the protections of Chapter 11, because Congress

took care in [§] 109 to specify who qualifies-and who does not qualify-as a debtor under the

various chapters of the Code."). Appellant's stated objective, a liquidating plan, is specifically

contemplated by the Bankruptcy Code and the Fifth Circuit has so held. "We have recognized

that the Bankruptcy Code does, however, contemplate liquidating reorganizations." *Lemelle v.*

*Universal Mfg. Corp*., 18 F.3d 1268 (5th Cir.1994); *relying on* *Sandy Ridge Dev. Corp. v.*

*Louisiana Nat'l Bank (In re Sandy Ridge Dev. Corp.)*, 881 F.2d 1346, 1352 (5th Cir.1989)

(determining that sections 1129(a)(11), 1123(a)(5), and 1123(b)(4) of the Bankruptcy Code

indicate that a reorganization plan may result in the liquidation of the debtor).   In filing its

Chapter 11, Appellant sought fair distribution of the assets to the multiple creditors pursuant to

11 U.S.C. § 1123(b)(4) which specifically provides for "the sale of all or substantially all of the

property of the estate, and the distribution of the proceeds of such sale amount holders of claims

or interests[.]"   Additional Code authority for liquidating chapter 11 cases is found in §

1123(a)(5)(D) which provides for the "sale of al or any part of the property of the estate . . . ."

Moreover, 11 U.S.C. § 1141(d)(3) clearly shows that Congress specifically contemplated

liquidating chapter 11 cases in that it specifically denies discharge to debtors whose liquidating

chapter 11 plan terminates a debtor's business and the debtor would be denied a discharge in a

chapter 7.

        **(ii)**    **Under *Little Creek,* there is insufficient evidence to find lack of "good faith."**

    40.   In *Matter of Little Creek Development Co.* 779 F.2d 1068, 1073-1074 (5th

Cir.1986), the Fifth Circuit sets out those factors tending to indicate "bad faith" in a chapter 11

filing.  Under the test set forth in ***Little Creek,*** there is not sufficient evidence to show any lack of Appellant's "good faith."  Importantly, this appeal of a dismissal arose in the context of an emergency remand hearing on two days notice to Appellant on a day when lead counsel was unavailable.  There were no witnesses.  No evidence was admitted other than the Debtor's schedules of which the bankruptcy Court took judicial notice.  Instead, the bankruptcy court made its implicit finding of "bad faith" based solely on the discussion with counsel for Appellee and counsel for Appellant, wherein each gave a brief description of  the state court litigation, a demonstrative exhibit that denied admission into evidence as hearsay, and on the Debtor's schedules (since amended).  In *Little Creek*, the Fifth Circuit faced  a similarly sparse evidentiary record, when reviewing a bankruptcy court's finding of "bad faith" based solely on the judicial admissions of debtor's counsel that the bankruptcy filing was in order to circumvent bond requirements of a state court appeal.   The *Little Creek* court, finding that the bankruptcy court's ruling was "abrupt" and "somewhat hasty," remanded to the bankruptcy court for additional factual findings regarding "bad faith."

> Standing alone, the conclusions of the bankruptcy court in this case, based solely on the statements of the debtor's counsel and the litigation tactic of attempting to retry the state court action in the course of the hearing on the motion for relief from the stay, did not provide sufficient evidence to show lack of good faith.  See, e.g., ***In re Route 202 Corp.***, 37 B.R. 367, 373 (Bankr.E.D.Pa.1984) (filing a bankruptcy petition on the eve of a scheduled foreclosure sale is not, by itself, sufficient to constitute bad faith).  When compared with the several general indicia of bad faith previously discussed, these facts do not rise to the level of egregiousness necessary to conclude that the reorganization process is being perverted in this case. The entire course of the bankruptcy court's consideration of the good faith issue, from the quoted remarks of debtor's counsel through a brief argument on oral motion for rehearing, occupies only a few  pages of trial transcript.  No witnesses were presented.  The debtor was afforded no prior notice of the issue, which had not been specifically raised by Commonwealth in its motion for relief from the stay. ***Matter of Little Creek Development Co.*** 779 F.2d 1068, 1073-1074 (5th Cir.1986) (some citations omitted).

     (iii)   **Dismissal on the grounds of "bad faith" was improper given that the judicially-created "good faith filing" requirement, made Fifth Circuit law in *Little Creek,* has since been overturned by the Supreme Court.**

    41.    Although there is case authority that recognizes a "good faith filing" requirement for Chapter 11, courts are rethinking blind adherence to such an illusive and inarticulable rule. *See **In re Victoria Limited Partnership*** 187 B.R. 54 (Bank. D. Mass.1995)(rejecting good faith filing requirement in a single asset real estate case); *see also **In re Landes***, 195 B.R. 855 (Bankr.E.D.Pa., May 14, 1996) (acknowledging doubt regarding earlier decisions finding a good faith filing requirement in chapter 11 cases, declining to construe in the Code a good faith filing requirement in chapter 7s); *see also **In re Quorum Ltd. Partnership***, 198 B.R. 5 (Bankr.D.N.H., Jun 25, 1996) (writing that *Victoria Limited Partnership* "make[s] an interesting point for analysis and that is how do those [earlier] rulings [wherein courts created the good faith filing requirement] square with recent Supreme Court decisions dealing with the proper construction of the Bankruptcy Code" the court denies secured creditor's motion to dismiss on the grounds of bad faith in a "new debtor" single asset real estate case, and instead elects to address "bad faith" concerns with the less drastic measures of shortened time frames for plan confirmation and mandatory deadlines); *see also **In re PPI Enterprises (U.S.), Inc.***, 228 B.R. 339, 33 Bankr.Ct.Dec. 856 (Bankr.D.Del., Dec 30, 1998) (calling the good faith filing requirement "somewhat nebulous" court denied creditor's motion to dismiss for "bad faith" when debtor proposed liquidating plan and debtor had no on-going business).

    42.    In *Victoria Limited Partnership*, a creditor of a Chapter 11 debtor in single asset real estate case sought dismissal of debtor's case on grounds that debtor filed its petition in bad faith on the eve of foreclosure of its office building. In the bankruptcy court's resounding

rejection of the judicially created "good faith doctrine" the court wrote: "Good faith, like apple pie, is difficult to oppose. The good faith of this doctrine, however, has nothing to do with honesty. When its true content is revealed, the doctrine is exposed in conflict with the Bankruptcy Code, its legislative history, Supreme Court precedent, and logic." *Id.* The *Victoria Limited Partnership* court went on to write:

> It [the good faith doctrine] is a prime example of how courts should not formulate a rule of law. A rule of law should be susceptible to clear statement, so that the result of its application to particular facts can be predicted with reasonable certainty. The good faith filing doctrine fails this test miserably. Its application does not depend upon the presence of any particular circumstances the courts list as relevant.
>
> In sum, the good faith filing doctrine is an amorphous gestalt, devoid of reasoning and impenetrable to understanding. *Id.* at 55 and 62 (footnotes omitted).

43.     First, the *Victoria Limited Partnership* dissects the genesis of the "good faith filing" requirement, revealing its dubious origin. *Id.* at 55-58 (pointing out that pre-Code the Bankruptcy Act indeed contained a Chapter X good faith filing provision, that Congress explicitly left out the good faith filing provision when enacting the Code, that the present day good faith filing doctrine is largely built upon the "absent-minded dictum" of a pre-Code 1st Circuit case which mistakenly relied on Chapter X cases to affirm the dismissal of a Chapter XII case for lack of good faith --wherein the court "showed no awareness" that only Chapter X of the Act contained a good faith filing provision, not Chapters XI and XII).

44.     Later, the *Victoria Limited Partnership* court points out that many of the factors leading to a finding of "cause" for dismissal as set out in the leading good faith filing requirement circuit cases conflict with the Code itself. For instance the *Little Creek* court directs bankruptcy courts to consider the lack of "going concern value to preserve" an indication

of bad faith. But 11 U.S.C. § 1112(b)(1), which lists the circumstances Congress expressed

merits dismissal, requires that bad prospects for reorganization must be coupled with "continuing

loss or diminution of the estate" *before* dismissal is warranted. **11 U.S.C. § 1112(b)(1)** (2000).

Similarly, none of the *Little Creek* factors indicating bad faith require the passage of time before

they can be evinced.

> The debtor has one asset, such as a tract of undeveloped or developed real
> property. The secured creditors' liens encumber this tract. There are
> generally no employees except for the principals, little or no cash flow, and
> no available sources of income to sustain a plan of reorganization or to
> make adequate protection payments pursuant to 11 U.S.C. 361, 362(d)(1),
> 363(e), or 364(d)(1). Typically, there are only a few, if any, unsecured
> creditors whose claims are relatively small. The property has usually been
> posted for foreclosure because of arrearages on the debt and the debtor has
> been unsuccessful in defending actions against the foreclosure in state court.
> Alternatively, the debtor and one creditor may have proceeded to a stand-
> still in state court litigation, and the debtor has lost or has been required to
> post a bond, which it cannot afford. *Little Creek* at 1073.

45.     By contrast, Code provisions, which describe circumstances giving rise to

dismissal of a chapter 11 each "expressly or impliedly contemplate the passage of some time

before a case is dismissed." ***Victoria Limited Partnership*** at 60; *see* **11 U.S.C. § 1112(b)(1)**

("continuing loss . . . of the estate and absence of reasonable likelihood of rehabilitation"), **(b)(2)**

("inability to effectuate a plan"), **(b)(3)** ("unreasonable delay"), **(b)(4)** ("failure to propose a plan

. . . within time fixed by court"), **(b)(5)** ("denial of confirmation"), **(b)(6)** ("revocation of an order

of confirmation"), **(b)(7)** ("inability to effectuate substantial confirmation of a confirmed plan"),

**(b)(8)** ("material default by the debtor with respect to a confirmed plan"), **(b)(9)** ("termination of

a plan by reason of the occurrence of a condition specified in the plan"), *and* **(b)(10)**

("nonpayment of any fees or charges"). The good faith filing doctrine is also inconsistent with

11 U.S.C.§ 1129(a)(3), which contains a good faith  requirement showing "Congress obviously

knew how to impose a good faith requirement when it wished to." *Victoria Limited Partnership* at 61.

46.     The clear inconsistency between *Little Creek* good faith indicia and the Code itself is even more troubling in light of subsequent Supreme Court rulings.  For example, one *Little Creek* indication of bad faith is the debtor's lack of any on-going business. *Little Creek* at 1074.  This simply cannot square with the 1991 the Supreme Court holding that there is no chapter 11 requirement that a debtor be running a business. *Toibb* 501 U.S. at 166.

47.     Nor does the Fifth Circuit's adherence to a rule that injects a provision into the Code --where Congress made the considered, deliberate decision not to-- withstand scrutiny in light of the Supreme Court's subsequent admonition in *Patterson v. Shumate*, 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992),  wherein the Supreme Court held the phrase "applicable non-bankruptcy law" in  11 U.S.C. § 541(c)(2) so clearly included state law and federal law that any further inquiry into its possible construction (whether Congress may  have meant to exclude from property of the estate only that property held according to state spendthrift law)  was barred, despite that a chapter 7 trustee urged the  court to compare  contemporary legislative material, weigh the construction's affect on other Code provisions, and consider the construction in light of Code policy objectives.   The court wrote that "a party seeking to defeat the plain meaning of Bankruptcy Code text bears an exceptionally "heavy burden" and only textual ambiguity would legitimize any judicial inquiry beyond a statute's plain meaning. *Patterson,* 504 U.S.  at 761 ("the clarity of the statutory language at issue in this case obviates the need for any such inquiry[.]")

48.     Tellingly, and without exception, the body of case law giving rise to and embracing the judicially-created good faith filing requirement is void of any evidence that the

circuit courts have struggled with the meaning of 11 U.S.C. § 1112(b), the provision of the Code

that provides for dismissal of chapter 11 cases. *See,* e.g., ***Little Creek,*** 779 F.2d at 1068-1074.[5]

Rather, the good faith filing requirement is an expression of the judiciary's flat disagreement with

Congress' choice not to extend the Act's good faith filing requirement.

49.     But ***Patterson*** stands for not reading restrictions into Code provisions where

there are none. "The Code reveals, significantly, that Congress, when it desired to do so, knew

how to restrict the scope of applicable law. . . ." ***Patterson.*** 504 U.S. at 760 (internal quotations

omitted). It follows that post-*Patterson* decisions should likewise resist gleaning Code good

faith requirements from Congressional silence. And, as in *Patterson*, the express good faith

requirements of 11 U.S.C. §1129(a)(3) clearly indicate that Congress knows how to provide for

a good faith requirement in a chapter 11 provision when it desires to. **11 U.S.C.§ 1129(a)(3)**

("[t]he court shall confirm a plan only if . . . [t]he plan has been proposed in good faith").

50.     For that matter, the very legitimacy of the judiciary's power to engraft a "good

faith" filing requirement in the Code where Congress chose not to --an explicit choice given that

the Act contained such a requirement and Congress has in fact included good faith provisions in

other parts of the Code-- must at least be seriously reevaluated after ***Taylor v. Freeland &***

***Kronz,*** 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992). In ***Taylor***, wherein the Supreme

---

5       It is worth noting that the *Little Creek* court explained its freedom to create the good faith filing requirement based on the notion that "[e]very bankruptcy statute since 1898 has incorporated literally, or by judicial interpretation, a standard of good faith for the commencement, prosecution, and confirmation of bankruptcy proceedings." As authority for this sweeping proposition the *Little Creek* court cites ***In re Victory Construction Co.*** 9 B.R. 549 (Bankr. C.D.Cal.1981), vacated on other grounds, 37 B.R. 222 (9th Cir. BAP1984). It is, in fact, not true, nor was it at the time *Victory Construction* was decided. In ***Sumeda v. Yumen*** 409 F.2d 654 (9th Cir.1969) *cert. denied,* 405 U.S. 964, 92 S. Ct. 1168, (1972), the Ninth Circuit held that there was no implicit good faith requirement in Chapter XI and XII cases under the Act, notwithstanding Chapter X's explicit good faith filing requirement. Moreover, at least one bankruptcy court has pointed out that the *Victory Construction* court mistakenly relied in part on "absent-minded dictum" from a pre-Code 1st Circuit case that relied on Chapter X cases to support the a finding of a good faith filing requirement in Chapter XII cases, but which court, troublingly,

Court held that a Chapter 7 trustee could not contest the validity of claimed exemption after 30-

day period for objecting had expired and no extension had been obtained --even though the

debtor lacked a good faith basis for claiming the exemption-- Justice Thomas, writing for the

majority, declined the Trustee's invitation to insert a good faith requirement in the Code where

Congress did not:

> Debtors and their attorneys face penalties under various provisions for engaging in improper conduct in bankruptcy proceedings. See, e.g., 11 U.S.C. 27(a)(4)(B) (authorizing denial of discharge for presenting fraudulent claims); Rule 1008 (requiring filings to "be verified or contain an unsworn declaration" of truthfulness under penalty of perjury); Rule 9011 (authorizing sanctions for signing certain documents not "well grounded in fact and ... warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law"); 18 U.S.C. 152 (imposing criminal penalties for fraud in bankruptcy cases). These provisions may limit bad-faith claims of exemptions by debtors. To the extent that they do not, Congress may enact comparable provisions to address the difficulties that Taylor predicts will follow our decision. *We have no authority to limit the application of §522(l ) to exemptions claimed in good faith.* **Id.** at 645-646 (emphasis added).

**(iv)   The judicially-created *Little Creek* "good faith filing" requirement, grounded in concerns regarding single asset real estate bankruptcies and "new debtor" syndrome, has been overturned by the 1994 amendments to the Code.**

51.    The judicially-created good faith filing requirement is the result of concerns

among the judiciary that "eve of foreclosure" single asset real estate chapter 11 cases are an

abuse of the bankruptcy process. The 1994 Bankruptcy Reform Act responded to the perceived

abuses of single asset real estate filings but more importantly made clear that single asset real

estate debtor's are entitled to avail themselves of bankruptcy protection. That is, the 1994

amendments gave birth to 11 U.S.C. § 362(d)(3) which describes the special procedure for

---

indicated no awareness that Chapter X contained an explicit good faith filing requirement. *See Victoria Limited Partnership* at 56.

bankruptcy protection for debtors comprised mainly of single asset real estate property. The 1994 amendments thereby legitimized single asset real estate bankruptcy filings, which, pre-amendments, were the main target of the growing good faith filing requirement body of law. One bankruptcy court, pointing this out, rejected the 11th Circuit's *"Little Creek"*[6] and wrote:

> The Court finds, however, that the law of **Phoenix Piccadilly** is no longer applicable in light of the Bankruptcy Reform Act of 1994, Pub.L. No. 103-394. [FN4] The Reform Act added the following definition of "single asset real estate":
>
>> "[S]ingle asset real estate" means real property constituting a single property or project, other than residential real property with fewer than 4 residential units, which generates substantially all of the gross income of a debtor and on which no substantial business is being conducted by a debtor other than the business of operating the real property and activities incidental thereto having aggregate noncontingent, liquidated secured debts in an amount no more than $4,000,000.
>
> 11 U.S.C. 101(51B). In addition, the Reform Act added a provision providing for a more expeditious handling of these single asset real estate cases. Section 362(d)(3) states that the automatic stay in a single asset real estate case will be lifted after 90 days unless the debtor files a plan with a reasonable possibility of confirmation, or commences payments to creditors whose claims are secured by the subject real estate. 11 U.S.C. 362(d)(3)
>
> This Court finds that Congress has clearly expressed its intention that the automatic stay not be lifted, and the case not be dismissed, simply because the case is a single asset real estate case. *Y.J. Sons & Co., Inc. v. Anemone, Inc. (In re Y.J. Sons & Co., Inc)*, 212 B.R. 793, 800 (D.N.J.1997) (Emphasis Added).

*See also* **Victoria Limited Partnership** at 62 (writing that application of the good faith filing requirement would "all but bar" the bankruptcy protections extended to single asset real estate cases by the Bankruptcy Reform Act of 1994).

       **(v.) Under *Little Creek*, Appellee's "unclean hands" bar its entitlement to the equitable remedy of a bad faith dismissal.**

---

6     *See Phoenix Piccadilly, Ltd. v. Life Ins. Co. (In re Phoenix Piccadilly, Ltd.)*, 849 F.2d 1393, 1394 (11th Cir.1988).

52.     Even if it still exists, the remedy of dismissal for lack of "good faith" is an equitable remedy and is available only to those with "clean hands." *Little Creek Dev. Co. v. Commonwealth Mortgage Corp. (In re Little Creek Dev. Co.),* 779 F.2d 1068, 1072 (5th Cir.1986) ("[A] good faith standard protects the jurisdictional integrity of the bankruptcy courts by rendering their equitable weapons ... available only to those debtors and creditors with 'clean hands.' ");   *see also* **Collier on Bankruptcy Vol. 7, Sec. 1112.07[3]** ("Another basic underpinning of the good faith doctrine is the equitable concept of 'clean hands.'  As a general matter, bankruptcy relief is equitable in nature, and, as a general rule, equitable remedies are not available to any party who fails to act in an equitable fashion."); *see also In re Kestell,* 99 F.3d 146 (4th Cir.1996) (discussing equitable nature of bankruptcy relief and the necessity that parties seeking relief have "clean hands").

53.     The "good faith" requirement for Chapter 11 petitioners has strong roots in equity. The court in *In re Victory Construction Co., Inc.,* in first articulating the good faith requirement under the current Bankruptcy Code, highlighted the equitable nature of the doctrine when it explained:

> Review and analysis of [the bankruptcy laws and relevant cases] disclose a common theme and objective [underlying the reorganization provisions]: avoidance of the consequences of economic dismemberment and liquidation, and the preservation of ongoing values in a manner which does equity and is fair to rights and interests of the parties affected.   But the perimeters of this potential mark the borderline between fulfillment and perversion;  between accomplishing the objectives of rehabilitation and reorganization, and the use of these statutory provisions to destroy and undermine the legitimate rights and interests of those intended to benefit by this statutory policy.   That borderline is patrolled by courts of equity, armed with the doctrine of "good faith."

*In re SGL Carbon Corp.,* 200 F.3d 154, 161 (3rd Cir. Del. Dec 29, 1999) quoting *In re Victory Construction Co., Inc.,*  9 B.R. 549, 558 (Bankr.C.D.Calif.1981) (order stayed) *Hadley v.*

*Victory Construction Co., Inc. (In re Victory Construction Co., Inc.)*, 9 B.R. 570 (Bankr.C.D.Calif.1981).

54.    The record is replete with evidence of Appellee's unclean hands. For example, Appellee agreed in writing to forgo the domestication of their Canadian Judgment in Texas, but then after losing in Louisiana proceeded to file it anyway. Additionally, Appellee has refused to identify the person who is actually the holder of the Canadian Judgment and how much consideration was paid. It is very likely that Appellee has already recovered more money than it paid for the rights to the judgment, and is thus in the position not of seeking the recovery of money lost but of additional profits. The Appellee is nothing but an economic "vulture," and when added to the other facts of this case this status leads to the inescapable conclusion that the Appellee cannot avail itself of equitable dismissal.

## VI.

## STATEMENT OF ORAL ARGUMENT

55.    Appellant requests oral argument on this appeal.

## VI.
## CONCLUSION

56.    The Bankruptcy Court order *sua sponte* dismissing Appellant's good faith chapter 11 liquidating bankruptcy should be reversed. The *sua sponte* dismissal was clear error to the extent the dismissal was based on an implicit finding of "bad faith" and an explicit finding that the case was only a two party dispute. The *sua sponte* dismissal was error as a matter of law to the extent the dismissal was based on the Honorable Bankruptcy Court's application of factual findings of "bad faith" to the legal standard for bad faith set out in *Little Creek.* The *sua sponte* dismissal was error as a matter of law to the extent it relied on the now over-ruled judicially-created "good faith" filing requirement set out in *Little Creek*. The *sua sponte* dismissal was

error as a matter of law in that it violated 11 U.S.C. § 1112(b)'s "notice and hearing" mandate. The *sua sponte* dismissal was error as a matter of law in that it violated 11 U.S.C. § 1112(b)'s "best interest of the creditors" test. The *sua sponte* dismissal was error as a matter of law in that it violated the due process rights of the unnoticed creditors.

WHEREFORE, Debtor, Baker Energy Resources Corporation, Appellant herein, prays that the District Court reverse the Honorable Bankruptcy Court's dismissal of Appellant's chapter 11 bankruptcy and for such further relief to which he may be justly entitled, both in law and in equity.

Respectfully Submitted,

Shelby A. Jordan
State Bar No. 11016700, Adm No. 2195
Anne E. Catmull
State Bar No. 00794932, Adm No. 19615
Nathaniel Peter Holzer
 State Bar No. 00793971, Adm No. 21503
500 North Water Street, Suite 900N
Corpus Christi, Texas 78471
Telephone:  (512) 884-5678
Telecopier:  (512) 888-5555
COUNSEL FOR  BAKER ENERGY
RESOURCES

## CERTIFICATE OF SERVICE

I, Shelby A. Jordan, certify that a true and correct copy of the foregoing instrument was mailed to all parties and counsel as provided below, by first class mail, on April 18, 2000.

Chris E. Ryman
COATS, ROSE, YALE, RYMAN & LEE, P.C.

Leonard Rose
Robert W. Tormohlen

800 First City Tower
1001 Fannin Street
Houston, Texas 77002

LEWIS, RICE & FINGERSH, L.C.
1010 Walnut, Suite 500
Kansas City, MO 64106

**ATTORNEYS FOR PLAINTIFFS**                    **ATTORNEYS FOR PLAINTIFFS**

Richard A. Schwartz
Phillip W. Bechter
SCHWARTZ, JUNELL, CAMPBELL
   & OATHOUT, L.L.P.
Two Houston Center
909 Fannin Street, Suite 2000
Houston, Texas 77010

Michael B. Schmidt, Esq.
Law Offices of
Michael B. Schmidt
712  American Bank Plaza
Corpus Christi, TX 78475

                                          Shelby A. Jordan