IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

United States District Court
Southern District of Texas
FILED

MAY - 3 2000

MICHAEL N. MILBY CLERK

CIVIL ACTION CA-C-00-128

IN RE: BAKER ENERGY RESOURCES CORPORAITON,
DEBTOR

BANKR.CASE NO. 00-20338-C-11

**BRIEF OF READING & BATES ENTITIES SEEKING
AFFIRMANCE OF BANKRUPTCY COURT'S *SUA PONTE ORDER*
DISMISSING CHAPTER 11 PETITION**

Michael B. Schmidt    TBN: 17775200
712 American Bank Plaza
Corpus Christi, TX 78475
Tel: 361/884-9949
Fax: 361/884-6000
And
Leonard Rose    SBOT #00785454
Robert W. Tormohlen    MO Bar #40024
James E. Kelley, Jr.    MO Bar #25954
LEWIS, RICE & FINGERSH L.C.
1010 Walnut, Ste. 500
Kansas City, MO 64106
Tel: 816/421-2500
Fax: 816/472-2500

ATTORNEYS FOR READING & BATES
CONSTRUCTION CO., AND READING &
BATES HORIZONTAL DRILLING, LTD.

16.

# TABLE OF CONTENTS

I.  STATEMENT OF APPELLATE JURISDICTION  . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  STATEMENT OF STANDARD OF REVIEW  . . . . . . . . . . . . . . . . . . . . . . . . . 1

III. STATEMENT OF ISSUES PRESENTED  . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

IV. STATEMENT OF THE NATURE OF THE CASE  . . . . . . . . . . . . . . . . . . . . . . 2

V.  STATEMENT OF THE RELEVANT FACTS  . . . . . . . . . . . . . . . . . . . . . . . . .  3

VI. ARGUMENTS AND AUTHORITIES  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

      A.  The Bankruptcy Court Was Well Within its Discretion When
           it <u>Sua Sponte</u> Dismissed the Chapter 11 Proceeding as Having
           Been Filed in Bad Faith  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

           1.  Preliminary Comments about the Profer.  . . . . . . . . . . . . . . . . . . .  8

           2.  The Bankruptcy Court was Well Within its Discretion in
               Finding that the Chapter 11 Filing Here was in Bad Faith.  . . . . . .  10

      B.  The Bankruptcy Court Properly Dismissed the Petition
           <u>Sua Sponte</u>, and no Notice was Required to be Given to
           the Only Other Non-Insider Creditor, McCarthy Tetrault. . . . . . . . . . . .  18

VII. CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  21

# TABLE OF AUTHORITIES

## FEDERAL CASES

In Argus Group 1700, Inc. v. Steinman,
    206 B.R. 757 (E.D. Pa. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 18, 19

In re Canion,
    196 F.3d 579 (5th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

In re Casse,
    219 B.R. (Bkrtcy. E.D.N.Y. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Dvinsky v. Cook,
    104 F.2d 981 (7th Cir. 1939) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

In re Finney,
    992 F.2d 43 (4th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

In re Gonic Realty Trust,
    909 F.2d 624 (1st Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

In re Gooding,
    234 B.R. 15 (Bkrtcy. M.D. Fla. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

In re Great American Pyramid Joint Venture,
    144 B.R. 780 (Bkrtcy. W.D.Tenn. 1992) . . . . . . . . . . . . . . . . . . . . . . . 13, 17, 19

In re Hatcher,
    218 B.R. 441 (8th Cir. BAP 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Matter of Koerner,
    800 F.2d 1358 (5th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

In re Koopman's,
    22 B.R. 395 (Bkrtcy. D. Utah 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

In re Laguna Associates, Ltd. Partnership,
    30 F.3d 734 (6th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Matter of Little Creek Development Co.,
     779 F.2d 1068 (5th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 13, 19, 20

 Patterson v. Shumate,
     504 U.S. 753 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Matter of Sandy Ridge Dev't. Corp.,
     881 F.2d 1346 (5th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

In re SB Properties, Inc.,
     185 B.R. 198 (E.D. Pa. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

 In re Staff Inv. Co.,
     146 B.R. 256 (Brktcy. E.D. Cal. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

In re St. Paul Self Storage Ltd. Partnership,
     185 B.R. 580 (9th Cir. BAP 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

In re Superior Siding & Window, Inc.,
     14 F.3d 240 (4th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

In re Tax Shop, Inc.,
     173 B.R. 605 (Bkrtcy. E.D. Mich. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Taylor v. Freeland & Kronz,
     503 U.S. 638 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

In re Weber,
     209 B.R. 793 (Bkrtcy. D.Ma. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

In re Wells,
     227 B.R. 553 (Bkrtcy. D. Fla. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Matter of Woodbrook Associates,
     19 F.3d 312 (7th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

In re Y.J. Sons & Co. Inc.,
     212 B.R. 793 (D. N.J. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

## STATUTES

11 U.S.C. §1112(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 10, 11, 13, 17, 19, 20

11 U.S.C. § 105(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

11 U.S.C. § 102 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

## RULES

Bankruptcy Rule 2002 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

## SECONDARY SOURCES

7 Collier on Bankruptcy, at pp. 1112 -49-50 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

## BRIEF OF READING & BATES ENTITIES SEEKING AFFIRMANCE OF BANKRUPTCY COURT'S *SUA SPONTE* ORDER DISMISSING CHAPTER 11 PETITION

COME NOW, Reading & Bates Construction Co. and Reading & Bates Horizontal Drilling Ltd. (hereinafter, collectively, "Reading & Bates") and hereby requests this court to affirm the bankruptcy court's <u>sua sponte</u> order dismissing the Chapter 11 bankruptcy petition of Baker Energy Resources Corporation (the "petition" and "Baker Energy") because:

1. The bankruptcy court did not abuse its discretion in dismissing the petition <u>sua sponte</u> on bad faith grounds; and

2. Under all the circumstances as presented, it was not necessary to notify the one other non-insider creditor of Baker Energy of the motion to dismiss or of the hearing on that motion.

### I.

### STATEMENT OF APPELLATE JURISDICTION

1. Reading & Bates, as appellee, agrees with Baker Energy's Statement of Appellate Jurisdiction.

### II.

### STATEMENT OF STANDARD OF REVIEW

2. Reading & Bates agrees generally with the standard set forth by Baker Energy; namely, that the bankruptcy court's conclusions of law are subject to <u>de novo</u> review by the district court while that its findings of fact will be upheld unless clearly erroneous. In addition, however, whether to dismiss a bankruptcy petition under 11 U.S.C. §1112(b) is a matter within the bankruptcy court's broad discretion, which decision thus will not be set

aside absent an abuse of such discretion.  See <u>Matter of Koerner</u>, 800 F.2d 1358, 1367 (5th Cir. 1986); and <u>Matter of Woodbrook Associates</u>, 19 F.3d 312, 316 (7th Cir. 1994).

## III.

## STATEMENT OF ISSUES PRESENTED

3.      The issues presented for this court's review are as stated by Baker Energy.

## IV.

## STATEMENT OF THE NATURE OF THE CASE

4.      On February 2, 2000, Baker Energy filed this Chapter 11 bankruptcy and, at the same time, removed to the bankruptcy court the pending state court action against Baker Energy, three related corporate entities and eight individuals pending in the 113th Judicial District Court of Harris County, Texas (the "State Court Action"). At the time of the filing there was a trial setting in the State Court Action for February 14, 2000.

5.      The State Court Action, filed in 1993, alleges that in 1992 Baker Energy and the other defendants engaged in a scheme to transfer all of Baker Energy's assets fraudulently and without consideration to related entities to escape liability and evade payment on a Canadian judgment in favor of Reading and Bates against Baker Energy, initially in the amount of $2,934,205.(Cd).  The defendants, other than Baker Energy, principally members of the Baker family which controlled the related entities, are sued under several theories, essentially, that they caused the fraudulent transfers to occur.

6.      On February 9, 2000, Reading and Bates filed an emergency motion to remand the State Court Action back to state court and, as applicable here, alternatively to dismiss the Chapter 11 petition as a bad faith filing.  The one non-insider creditor, McCarthy

2

Tetrault of Toronto, Canada, a law firm or lawyer stated in the petition as owed legal fees for the period of October 1994 through February 1995 in the amount of $45,064, was not given notice of the emergency motion. The only other two creditors listed in the petition's original schedules are Baker Marine Corporation ("Baker Marine"), the parent of Baker Energy, with a claim for $18,500 to reflect an advance to Baker Energy to pay the retainer fee for counsel for Baker Energy herein, and LLR Holding Corporation ("LLR"), an entity created by the Baker family in 1992 (allegedly) to participate in the scheme fraudulently to transfer Baker Energy's assets in 1992 and the parent of the entity, Berco Services, Inc., to which those assets were ultimately transferred by LLR.

8.     The bankruptcy court heard the emergency motion on February 11, 2000, with two counsel for Baker Energy and one for the other defendants in the State Court Action being present. Baker Energy filed a 29-page brief in opposition to that motion at the hearing. At the conclusion of the hearing and following a recess, the bankruptcy court ruled that under the circumstances the petition should be dismissed <u>sua sponte</u> and the State Court Action remanded. The signed order of dismissal, entered that day, stated that the bankruptcy judge was granting the motion to dismiss <u>sua sponte</u>.

## V.

### STATEMENT OF THE RELEVANT FACTS

9.     Reading and Bates incorporates herein the above paragraphs 4 through 8.

10.     At the hearing on the emergency motion to remand and alternatively to dismiss the petition as filed in bad faith, Reading and Bates, through counsel, made a factual presentation which was not objected to on a hearsay or other basis. Transcript ("Tr.") 4-11.

3

Counsel for Baker Energy added some additional facts at Tr. 12-16. In summary form as shown by those pages, the following facts appear of record:

A.    The State Court Action has been "hotly litigated" with numerous discovery disputes and depositions and three motions for summary judgments by the defendants, all denied, with the case finally being set on a docket for trial three days following the hearing, on February 14, 2000;

B.    The petition in bankruptcy was filed as a trial tactic to further delay the State Court Action and to forum shop in view of adverse rulings therein;

C.    Baker Energy has not been in business since 1993 and has had substantially no assets since then as reflected by the schedules with the petition showing $129 in assets and approximately $6,871,200 in liabilities (of which the current debt to Reading and Bates, now pursuant to a Texas judgment, constitutes approximately $6,587,000, or 96% of the total);

D.    In January 1992 after years of litigation between Reading and Bates and Baker Energy in Canada, a referee in the Canadian federal court recommended that judgment be awarded against Baker Energy for $2,934,205. (Cd.) plus interest;

E.    At that time Baker Energy had unencumbered assets of an approximate value of $1,400,000. Contemporaneously, its parent, Baker Marine, owed some $12,000,000 (or $19,000,000.) to Sea First (a bank) on a promissory note (the "Note") secured by certain assets - but not those of Baker Energy - and by Baker Marine's 100% of the stock of Baker Energy;

F.    In a compromise finalized by the Baker family with Sea First in early 1992, Sea

4

First, in exchange for $600,000 in cash from the personal assets of members of the Baker family, assigned all its right, title and interest in the Note and debt owed to it by Baker Marine, as well as all of its security, to LLR, an entity created in early 1992 and owned by the Baker family;

G.   Then in April 1992 Baker Energy pledged all of its assets, previously unencumbered, to LLR to further secure the Note by then assigned to LLR[1];

H.   Following the Canadian federal court entering a final judgment, as recommended by the referee, against Baker Energy, which occurred in July 1992, LLR in August 1992 declared the assigned Sea First Note in default, foreclosed upon all the Baker Energy assets previously so transferred to it as security and later transferred them to its subsidiary, Berco Services, Inc., giving a $1,200,000 credit on the Note;

I.   It is the impact of these (and other) operative facts that was set to be tried in front of Judge Hancock in Harris County on a docket to begin February 14, 2000.

11.   Following the factual presentation of counsel at the hearing, the bankruptcy court, observing that the bankruptcy had been filed "on the eve of trial", inquired how was a "reorganization possible for this debtor" with only $129 worth of assets. Its counsel replied that Baker Energy had in mind a liquidating Chapter 11 plan with the asset being Baker Energy's right, if it existed, to recover those assets it allegedly fraudulently transferred in

_____

[1]Thus, Reading & Bates claims, depriving the creditors of Baker Marine of the benefit of those assets!

5

derogation of creditors' rights.  Conceding that bankruptcy fees for Baker Energy's counsel had come from Baker Marine, one of the defendants in the State Court Action claimed to have engaged in the unlawful scheme to fraudulently transfer assets, Baker Energy's bankruptcy counsel stated that his firm would fulfill its fiduciary obligation to evaluate the claims and "If we determine that they should be pursued and are worth pursuing, we will pursue those claims."  Tr. 19-21.

12.    The bankruptcy court then inquired about the practicalities that if a dismissal or remand was entered that day, it would not be final for 10 days.  Reading & Bates counsel responded that February 14 date represented a two-week docket beginning that day and that thereafter for the two to three day bench trial anticipated he believed that the trial judge's schedule was flexible "and she can fit us in." Tr. 21-22.

13.    Following a break in the hearing, the bankruptcy court announced its decision to dismiss the petition, citing that in essence what was involved was a two-party dispute between Reading & Bates and defendants in the State Court Action, that the only asset of Baker Energy was the claim for the return of its assets and that the only other creditors were insiders and the one lawyer creditor.  One of the attorneys for Baker Energy then stated that Baker Energy did not come prepared to argue the bad faith filing issue and raised the issue of notice to the lawyer from Canada as a creditor.  The court responded that it could "sua sponte dismiss the bankruptcy" but added that it fully expected a motion to reconsider which would be given expedited consideration and that to the extent others needed to be notified, they could be.  Tr. 27-28.

14.    In fact, no motion for reconsideration of the court's order dismissing the

6

petition sua sponte was filed; rather Baker Energy choose to appeal to this court.

15.     The schedules filed with the petition list $129.37 as the only asset of Baker Energy (but Debtor's counsel did point out at the hearing that the claim to recover its assets wrongfully transferred was an asset of Baker Energy) and debts only, as above mentioned, to Baker Marine (the $18,500 advanced for the bankruptcy counsel retainer), to LLR for other advances, to McCarthy Tetrault, the lawyer (or law firm) in Canada, and to Reading & Bates (for approximately $6,587,000). As an afterthought, in its Amended Schedules filed on or about March 7, 2000, Baker Energy lists (principally) the 11 other defendants in the State Court Action as having potential reimbursement claims against Baker Energy should they be found liable for participating in the fraudulent transfers. The existence and addresses of those creditors were not in the original schedules (and, in any event, their addresses were given as c/o their counsel, who was present at the February 11 hearing). It is also apparent from the amended schedules that the debt to McCarthy Tetrault was at least five years old, as representing legal services between October 1994 and February 1995 in Canada.

16.     In its Brief in this court Baker Energy mentions that due to the short notice, Baker Energy's lead counsel was unable to attend the hearing on February 11 and that also due to such short notice much available evidence which lead counsel could have presented was not presented, including "the history of this entire case." Debtor's Brief, pars. 8,10 and 14.  All that, however,  is beside the point in the context that the bankruptcy court clearly  invited Baker Energy to move for reconsideration of the dismissal and remand and that Baker Energy obviously choose not to avail itself of that opportunity.  Baker Energy had already filed a 29-page brief on the day of the hearing which was considered by the bankruptcy court.

7

17.     Baker Energy makes continued reference in its Brief to the so-called Proffer of Testimony (of Larry Baker) and Judicial Notice (the "Proffer"), a document which while designated by Baker Energy to be included in the record on this appeal was not presented to the bankruptcy court until the hearing of March 8, 2000 which solely related to Baker Energy's motion to reconsider the remand of the State Court Action (a matter still before the bankruptcy court).  Moreover, the Proffer was admitted by stipulation for the sole purpose of reconsideration of the motion for remand.  Finally, having not been presented and considered by the bankruptcy court in connection with its decision to dismiss <u>sua sponte</u>, it is entitled to no consideration by this court.

## VI.
## ARGUMENTS AND AUTHORITIES

A.     THE BANKRUPTCY COURT WAS WELL WITHIN ITS DISCRETION WHEN IT <u>SUA SPONTE</u> DISMISSED THE CHAPTER 11 PROCEEDING AS HAVING BEEN FILED IN BAD FAITH

1.     <u>Preliminary Comments about the Proffer.</u>

18.     First, as above noted, the Proffer, having not been presented to the bankruptcy court as relevant to its decision to dismiss (although Baker Energy had the opportunity so to do had it, as invited, moved for reconsideration), cannot bear on whether that court abused its discretion in dismissing the Chapter 11 proceeding.

19.     Second, to the extent the Proffer is accurate, what it and the record otherwise shows, in summary, is that to date Baker Energy and its related entities and individuals, despite substantial efforts by Reading & Bates, have been largely successful in resisting collection on the Canadian judgment, now at last (in 1999) a Texas judgment, and have

8

managed to put off the evil day, anticipated to come on or shortly after February 14, 2000, where a judge would try the merits of the issue of whether the machinations of Baker Energy and the others to transfer Baker Energy's assets first as security for the debt of Baker Marine for no consideration to Baker Energy, and subsequently outright to a related entity of Baker Energy, amounted to a fraudulent transfer or transfers. The many proceedings and the length and complication of those collection efforts simply have mirrored Baker Energy's (and others') resistence to payment of what - by virtue of a judgment - has been determined to be a just debt due to Reading and Bates from Baker Energy.

20.    Third, Baker Energy implicitly suggests in its Brief that to the extent that the this long history of litigation should come to an end, Judge Hancock will be incapable  of doing so (and only the bankruptcy court could). To the contrary,  to the extent that the evidence in the State Court Action demonstrates that Reading and Bates' claims of fraudulent transfer have no merit, there is no reason to presume that Judge Hancock will not be capable of making that determination. Remarks such that Reading & Bates "is nothing but an economic 'vulture'" (Baker Energy's Brief, par. 54) have no place in this record. Furthermore, if Baker Energy's contention that every time Baker Energy is defeated on the issues of a fraudulent transfer (whether on the merits or attempts at injunctive relief), Baker Energy "simply goes to another court and files another suit" (Baker Energy's Brief, p. 12) has merit as entitling it to the benefit of collateral estoppel or res judicata, again the Texas state courts will be well able to rule correctly on that.

21.    Baker Energy contends that Reading & Bates "is not the claims holder or the true party in interest" and that the judgment was assigned to it for which it paid "no or little

9

consideration." Baker Energy's Brief, par. 12. Where these contentions are even in the Proffer is a mystery. In any event, to what extent significant, there is no reason to suspect that those contentions, if relevant, will not be properly dealt with in the State Court Action. In addition, one could question the propriety of the latter claim when in exchange for $600,000 LLR took assignment from Sea First of the $12 million or $19 million Note and then caused Baker Energy to transfer to it for security all of its assets, worth some $1,400,000, upon which security LLR shortly thereafter foreclosed, giving its related entity, Baker Marine, a $1,200,000 credit!

> 2.     The Bankruptcy Court was Well Within its Discretion in Finding that the Chapter 11 Filing Here was in Bad Faith.

22.     On this record the bankruptcy court was well within its discretion <u>sua sponte</u> to dismiss the bankruptcy as filed in bad faith and as in essence a two-party dispute between Reading and Bates and Baker Energy.

23.     At the outset, the 1992 Supreme Court cases of <u>Patterson v. Shumate</u>, 504 U.S. 753, and <u>Taylor v. Freeland & Kronz</u>, 503 U.S. 638, admonishing where appropriate courts not to add judicial gloss to unambiguous provisions of the Bankruptcy Code, have no tendency to demonstrate that a bad faith filing is not adequate cause to dismiss a Chapter 11 petition. Rather, § 1112(b) permits such a dismissal or conversion of a Chapter 11 to a Chapter 7 proceeding "whichever is in the best interest of creditors and the estate, for cause including" the 10 specific reasons which follow. Obviously, as the legislative history of § 1112(b) as well as the text makes clear, the 10 enumerated reasons were intended to be non-exhaustive of what can constitute "cause." <u>In re Y.J. Sons & Co. Inc.</u>, 212 B.R. 793, 800, 01

(D. N.J. 1997).

24.     A multitude of cases prior to 1992 understandably held that a bad faith filing

was cause for dismissal or conversion under § 1112(b).  At least these additional cases since

1992 have also so held: <u>In re Casse</u>, 219 B.R. (Bkrtcy. E.D.N.Y. 1998); <u>In re Superior Siding &</u>

<u>Window, Inc.</u>, 14 F.3d 240 (4th Cir. 1994); <u>In re Weber</u>, 209 B.R. 793 (Bkrtcy. D.Ma. 1997); <u>In</u>

<u>re Hatcher</u>, 218 B.R. 441, 448 (8th Cir. BAP 1998); <u>In re Y.J. Sons & Co., Inc.</u>, 212 B.R. 793,

800, 801 (D.N.J. 1997); and <u>In re Wells</u>, 227 B.R. 553, 560 (Bkrtcy. D. Fla. 1998).  There is

thus no reason not to follow <u>Matter of Little Creek Development Co.</u>, 779 F.2d 1068, 1071-72

(5th Cir. 1986) to the same effect.

25.     On the merits and as amply demonstrated before the hearing on the

bankruptcy court on February 11, what is involved here is essentially a two-party dispute and

the filing some 12 days before a date in the State Court Action to resolve it finally, specifically

to determine whether Baker Energy fraudulently transferred its assets in 1992, and whether

the other defendants wrongfully participated in that transfer, of a petition in bankruptcy to

avoid that trial and not out of any desire to reorganize any business under the Bankruptcy

Code or to make sure that creditors as a group were fairly treated in such a reorganization.  <u>At</u>

<u>the least, the bankruptcy court was well within its discretion so to find.</u>

26.     Baker Energy's implicit desire now belatedly to protect its one other non-

insider creditor, the Toronto lawyer (or firm) owed some $45,000 since 1995, is blatantly

hypocritical when, to belabor the obvious, it had ignored that obligation in the five years

since then (while nevertheless paying some other creditors after the transfer of all of it assets,

as reflected in the advances from LLR totaling $220,000).

11

27.     Nevertheless, Baker Energy insists that it desired not to avoid the State Court Action but to perform a liquidating reorganization.  Reading & Bates agrees that a liquidating Chapter 11 reorganization, in appropriate circumstances, is permissible under the Bankruptcy Code.  However, it is not permissible here where the purported bankruptcy debtor has been out of business since 1992, has only $129 in property to go along with the cause of action against its insiders for the fraudulent transfer of its own assets <u>and</u> where there is in essence a two-party dispute here.

28.     The distinction between a valid liquidating reorganization and a proceeding only falsely claimed to be one becomes clear in the discussion in <u>In re Koopman's,</u> 22 B.R. 395, 402 (Bkrtcy. D. Utah 1982).  Where there is a functioning business with assets and good will potentially to be sold, a reorganization involving keeping the business alive and conserving its good will while an orderly sale can be arranged will, or certainly may, increase the overall return to creditors and security holders, as opposed to ceasing operations and disposing of what is left not as a going concern.  Under such circumstances, liquidations are permitted in Chapter 11, not where there is no business, no business assets and no good will.  For example, In <u>In re Gonic Realty Trust</u>, 909 F.2d 624, 627 (1ˢᵗ Cir. 1990), where the debtor's assets consisted principally of a claim against another party, citing the general purpose of Chapter 11 "to promote financial restructuring and payments to creditors while preserving jobs and shareholder interests", the court held:

> The bankruptcy court properly concluded that the malpractice counterclaim [the debtor's asset] is not a bankruptcy court issue, and had nothing to do with the rehabilitative character of the bankruptcy procedures.  Thus, with no business left to reorganize, the Chapter 11 proceedings were not serving the purpose of rehabilitating the debtor's

12

business.

909 F.2d at 627.  The <u>Gonic</u> court concluded that the bankruptcy judge did not abuse its

discretion in dismissing the case.  See also <u>In re Great American Pyramid Joint Venture</u>, 144

B.R. 780, 791-92 (Bkrtcy. W.D.Tenn. 1992) (Debtors' business had essentially ceased

operations, no substantial business left to reorganize, no Chapter 11 purposes to be served and

"cause" existed to dismiss under §1112(b)).  Finally, in <u>Matter of Sandy Ridge Dev't. Corp.</u>, 881

F.2d 1346, 1348 (5th Cir. 1989), in which the court correctly ruled that when appropriate a

liquidating reorganization is permissible under Chapter 11, it is noteworthy there, as

distinguished from here, that the debtor had substantial property, in addition to a litigation

claim, available for distribution.  Here Baker Energy has been a shell for years with only a

litigation claim for the wrongful transfer of its assets.  <u>See</u> <u>Dvinsky v. Cook,</u> 104 F.2d 981, 985

(7th Cir. 1939) ("[I]t appears plainly that the instant proceeding was instituted not for the

purpose of obtaining benefits under the [former Bankruptcy] Act to a corporation in financial

distress, but to enable appellees to escape the jurisdiction of another court where the day of

reckoning of their alleged acts of misconduct was at hand.")

     29.     Courts look at a number of factors inquiring whether there was a bad faith

filing. While no case is precisely on all fours with any other, many of the factors articulated by

the Fifth Circuit in <u>Little Creek</u>, 779 F.2d at 1072-73, are present here: (1) debtor has only one

asset (here the claim for fraudulent transfer); (2) debtor has no employees, (3) debtor has little

or no cash flow; (4) there in a dispute with a secured creditor, there were few unsecured

creditors whose claims were small (analogous to Reading & Bates here being the holder of

96% of Baker Energy's total scheduled indebtedness); and (5) the debtor and the complaining

13

creditor "may have proceeded to stand-still in state court litigation."

30.     Other courts have articulated factors indicative of bad faith in Chapter 11
filings which clearly support that finding of the bankruptcy court here.  In <u>In re SB</u>
<u>Properties, Inc.</u>, 185 B.R. 198, 205 (E.D. Pa. 1995), the court stated the general inquiry as
whether a petitioner honestly intended to effect a reorganization both necessary and possible
and not for the purpose of hindering and delaying creditors.  Fourteen factors were then
articulative of which these eight are present here: (1) improper pre-petition conduct of a
debtor; (2) the petition effectively allowed the evasion of court orders (here a trial date in the
State Court Action); (3) "few debts to non-moving creditors"; (4) petition filed there on the
eve of foreclosure (here on the eve of trial); (5) no on-going business or employees of debtor;
(6) no income sufficient to operate; (7) no pressure from non-moving creditors; and (8)
"reorganization essentially involves the resolution of a two-party dispute."

31.     <u>In re St. Paul Self Storage Ltd. Partnership</u>, 185 B.R. 580, 582-83 (9th Cir. BAP
1995), the court articulated five such factors as among those indicative of a petition filed in bad
faith, all five of which are present in varying forms here, whether: (1) the debtor has only one
asset; (2) the debtor has an ongoing business to reorganize; (3) there are any unsecured
creditors [where there was a secured creditor]; (4) the debtor has any cash flow or sources of
income to sustain a plan of reorganization; (5) the case is essentially a two-party dispute
capable of prompt adjudication in state court.

32.     In <u>In re Laguna Associates, Ltd. Partnership</u>, 30 F.3d 734, 738 (6th Cir. 1994),
the court listed eight factors, seven of which are present in varying forms here, including
improper pre-petition conduct of Baker Energy (as Reading & Bates claims), only a few other

14

creditors, Baker Energy being able to evade court orders by virtue of the filing, no on-going business or employees and "the lack of possibility of rehabilitation."

33.    In <u>Argus Group 1700, Inc. v. Steinman</u>, 206 B.R. 757 (E.D. Pa. 1997), the district court affirmed the bankruptcy court's determination to dismiss on bad faith grounds in what was essentially a two-party dispute. <u>See also</u> <u>In re Gooding</u>, 234 B.R. 15 (Bkrtcy. M.D. Fla. 1999) (Chapter 11 dismissed: filing a litigation tactic in a two-party dispute).

34.    Two other matters are worthy of mention here. First, while conceding that bankruptcy counsel engaged for Baker Energy in this dismissed proceeding have a fiduciary obligation to evaluate its claim which has been championed for many years only by Reading &Bates that Baker Energy fraudulently transferred away its assets in 1992, and while we do not question the integrity of the bankruptcy counsel, it is obvious that there is a conflict of interest here because bankruptcy counsel is being paid by the other defendants in the State Court Action who and which have contended for years, and contend now as in their best interests, that no such unlawful transfer occurred.  To expect bankruptcy counsel to pursue the claim of unlawful transfer to the extent it deserves, practically, is to ask for the impossible. Nor, in view of the fact that Reading & Bates counsel has worked on the matter for years would it be anticipated that bankruptcy counsel would be able to pursue the claim efficiently.

35.    Second, the tenor of Baker Energy's Brief in this court is to denigrate and disparage the viability of the very claims which bankruptcy counsel would be required to evaluate independently.  Examples are calling Reading & Bates "nothing but an economic 'vulture'", attempting to raise a potential issue that Reading & Bates may not be the real party in interest, arguing that Reading & Bates "likely . . . has already recovered more money than it

15

paid for the rights to the judgment" and further should not recover because it has already lost on the merits elsewhere and claiming that Reading & Bates has pursued Baker Energy by means of repetitious and vexatious litigation. That tenor of those contentions in their Brief, in addition to being baseless and unsupported by the record, would suggest the appearance at least that bankruptcy counsel, consistent with the wishes of those who are paying them, have already proceeded a long way to make up their mind as to the merits of the claims of fraudulent transfer, another factor supportive of the proper dismissal of the petition as a bad faith filing.

36.     Baker Energy insists that the Chapter 11 proceeding is not a two-party dispute, citing the addition in the amended schedules (filed after the hearing of the motion to dismiss and the actual dismissal) of the claims of Baker Energy's co-defendants in the State Court Action who and which, counsel argues, "have contribution, subrogation and/or indemnification rights as contingent creditors of the . . . bankruptcy estate." Baker Energy's Brief at par. 35. The case Baker Energy cites in support of that proposition, In re Canion, 196 F.3d 579 (5th Cir. 1999), has nothing to do with that proposition (but does discuss that under Texas law shareholders of Baker Energy would not have personal liability for transfers in fraud of its creditors unless they acted with an intent to defraud).

37.     In reality, as an afterthought or otherwise, these are not real even contingent claims against Baker Energy. If in the State Court Action Baker Energy recovers because its assets were transferred away fraudulently, it will recover its property back (or actual damages) and, possibly, punitive damages. Whatever that recovery is, which will be from the State Court Action co-defendants found to be wrongdoers (to the extent they are found personally

16

liable), they would not have the right to recover back from the estate of Baker Energy as a bankruptcy debtor. Thus, since they are not potential creditors of the estate if Baker Energy prevails for fraudulent transfer of its assets, this case is in reality a two-party dispute.

38.     Two additional points here. First, if Reading & Bates were to recover more from some of the other defendants than on behalf of Baker Energy, those other defendants would be entitled to a credit for what Reading & Bates received from Baker Energy as its share of the recovered assets (or damages), nothing more. Second, this is a two-party dispute no mater how you slice it: Reading & Bates (on behalf of Baker Energy) against the Baker family, etc., the other defendants in the State Court Action.

39.     Once the bankruptcy court determines that there has been a bad faith filing, whether to dismiss or convert a Chapter 11 to a Chapter 7 is committed to the sound discretion of the bankruptcy court. In re Great American Pyramid Joint Venture, supra, at 791. The test is "whichever is in the best interest of creditors and the estate". 11 U.S.C. §1112(b). What is considered is "the singular best 'interest' of creditors and the estate and the estate as a group . . .a collective best interest." 7 Collier on Bankruptcy, at p. 1112 -49-50. Here, even considering the insider claims of LLR and Baker Marine, the claims of Reading & Bates equal 96% in dollar amount of creditor claims. Obviously, it is not necessary that the interest of every creditor favor dismissal over conversion; rather, the interest of a single creditor with a large enough claim will suffice to control that choice. In re Staff Inv. Co., 146 B.R. 256, 260-61 (Brktcy. E.D. Cal. 1992) (there the wishes of a single creditor with 95% of the total unsecured debt for conversion was deemed entitled to prevail).

40.     Baker Energy argues that Reading & Bates has "unclean hands," principally,

17

Baker Energy asserts, by domesticating the Canadian judgment in Texas after agreeing not to do so. Baker Energy Brief, par. 54. First, the purported support for that assertion must be at p. 19 of the Proffer, but what is there, relating to the Louisiana, not the Texas, judgment, does not support that assertion. Second, again, the Proffer was admitted solely for purposes of the bankruptcy court's reconsideration of the motion to remand four weeks after the February 11 hearing resulting in dismissal that day. Third (although this is not of record either herein), Reading & Bates did not breach any agreement made. The other assertions by Baker Energy as to unclean hands (second and third sentences , par. 54 of its Brief) have no basis in the record (not even in the Proffer), are legally irrelevant and fail to demonstrate unclean hands to the extent true. Again, none of the asserted "unclean hands" matters was brought to the attention of the bankruptcy court in connection with its decision to dismiss sua sponte and so can have no bearing on whether that court abused its broad discretionary authority in doing so.

B.     THE BANKRUPTCY COURT PROPERLY DISMISSED THE PETITION SUA SPONTE, AND NO NOTICE WAS REQUIRED TO BE GIVEN TO THE ONLY OTHER NON-INSIDER CREDITOR, MCCARTHY TETRAULT.

41.     According to the schedules, McCarthy Tetrault is owed some $45,000 for legal work performed through February 1995 in Canada. Obviously, Baker Energy had ignored that obligation for five years and, at least implicitly, McCarthy Tetrault had not pressed its claim. Baker Energy is now shedding crocodile tears on its behalf.

42.     First, as held in Argus Group 1700, Inc. v. Steinman, supra, 206 B.R. at 764, Baker Energy lacks standing to argue that McCarthy Tetrault was not given notice of the motion to dismiss where McCarthy Tetrault is not a party in this court. Such a non-standing

18

rule makes imminent sense because McCarthy Tetrault was not prejudiced by any failure to get notice: when it can benefit from a recovery for fraudulent transfer of assets by Reading & Bates on behalf of Baker Energy, would it reasonably prefer that claim to be pursued promptly in the State Court Action by Reading & Bates with the major stake in the matter and its counsel who have labored long to prepare the case or that the claim to be made perhaps at some future time by bankruptcy counsel who are not so prepared at present and are being paid by the claimed wrongdoers?

43.    Second, it is clear that the bankruptcy court had the power to dismiss or convert sua sponte under 11 U.S.C. § 105(a), pursuant to which

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate . . . to prevent an abuse of process.

44.    The following cases hold that § 105(a) empowers the bankruptcy court to dismiss or convert a Chapter 11 proceeding sua sponte. In re Great American Pyramid Joint Venture, supra, 144 B.R. at 789. Argus Group 1700, Inc. v. Steinman, supra, 206 B.R. at 763 and cases cited therein. In re Finney, 992 F.2d 43, 45 (4th Cir. 1993) (the bankruptcy court may act under the formalities of 1112(b) or sua sponte under § 105(a)). In re Tax Shop, Inc., 173 B.R. 605, 607 n.3 (Bkrtcy. E.D. Mich. 1994) (court may dismiss sua sponte as within broad authority of § 105 as "necessary or appropriate . . . to prevent an abuse of process"). See Little Creek, supra, 779 F.2d at 1071, n.1. As such, since here the bankruptcy court was acting sua sponte, as it were on its own motion, the "notice and hearing" requirement of § 1112(b) need

19

CMPDF - www.fesco.com

not be followed because it only applies, at most, where a dismissal is requested by "a party in interest or the United States trustee or bankruptcy administrator" (11 U.C.S. § 1112(b)).

45.     In addition, since the bankruptcy court is free to act on its own irrespective of the wishes of the debtor or others, neither is the 20-day notice called for by Bankruptcy Rule 2002 in order when the court acts <u>sua sponte</u> under § 105(a).  Nor could Rule 2002(a) be followed in any emergency situation, which this was reasonably was, since although if there was to be an appeal following the hearing of February 11, the precise February 14th trial date could not be met, yet as discussed at the hearing of February 11, the State Court Action was on a two-week docket beginning February 14 and there was a likelihood that the judge could accommodate the parties for trial, in this non-jury case, relatively expeditiously thereafter if that docket were missed.  Also in that connection, 11 U.S.C. § 102 defines the phrase "after notice and hearing" (as used, for example, in 11 U.S.C. § 1112(b)) as "after such notice as is appropriate in the particular circumstances and after such opportunity for a hearing as is appropriate in the particular circumstances" and even authorizes an act without a hearing in specified circumstances.

46.     Baker Energy argues, in effect, that the record in the February 11 hearing is too sparse to support the <u>sua sponte</u> dismissal and cites <u>Little Creek</u>, 779 F.2d at 1073, in support. Baker Energy Brief, par. 40.  First, Baker Energy did not object on a hearsay basis or otherwise to proceed with the relevant facts based on the statement of counsel and in fact introduced their own clarifying facts in that fashion.  Second, what the court said in <u>Little Creek</u> was not that the relevant facts could not come in in that fashion but rather that the "facts" so presented there did not rise to "the level of egregiousness" when compared with the

20

"several general indicia of bad faith previously discussed."  The court, in remanding the

matter, also relied upon the fact, not present here, that the debtor "was afforded no prior

notice of the issue . . .."   779 F.2d at 1073.

## VII.

## CONCLUSION

47.     The court should affirm the bankruptcy court in the exercise of its discretion in

dismissing Baker Energy's Chapter 11 bankruptcy petition <u>sua sponte</u>.

21

Respectfully Submitted,

By: _____

Michael B. Schmidt          TBN: 17775200
712 American Bank Plaza
Corpus Christi, Texas 78475
TEL:  (361) 884-9949
FAX:  (361) 884-6000

and

By: _____

Leonard Rose               SBOT #00785454
Robert W. Tormohlen        MO Bar #40024
James E. Kelley, Jr.        MO Bar #25954
LEWIS, RICE & FINGERSH L.C.
1010 Walnut, Suite 500
Kansas City, Missouri 64106
TEL:  (816) 421-2500
FAX:  (816) 472-2500

ATTORNEYS FOR READING & BATES
CONSTRUCTION CO., AND READING &
BATES HORIZONTAL DRILLING, LTD.

22

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that he served a true and correct copy of the above and foregoing on this ___3___ day of May, 2000 by regular mail, postage prepaid, addressed to:

Richard Schwartz
Phillip W. Bechter
Schwartz, Junell, Campbell & Oathout
909 Fannin, Suite 2000
Houston, Texas  77010

Shelby A. Jordan
Nathaniel Peter Holzer
Jordan, Hyden, Womble & Culbreth, PC
500 North Shoreline, Suite 900
Corpus Christi, TX  78471

Local U.S. Trustee
Barbara Kurtz
606 N. Carancahua, Suite 1107
Corpus Christi, TX 77002

McCarthy Tetrault
Toronto Dominion Bank Tower
Suite 4700
Toronto-Dominion Center
Toronto, Canada  M5K 1E6

Texas Comptroller of Public Accounts
c/o Lynn Hamilton Butler, Asst. A.G.
Office of the Texas Attorney General
P.O. Box 12548
Austin, TX 78711-2548

F:\LRF\JEK\lnarc\brief

_____
An Attorney for Reading & Bates/Appellees

23